No. 95-114

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

MOLERWAY FREIGHT LINES, INC.,

     Plaintiff and Appellant,

v.

RITE-LINE TRANSPORTATION
SERVICES, INC.,

     Defendant and Respondent.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          W. Anderson Forsythe, Moulton, Bellingham, Longo
and Mather, P.C., Billings, Montana

     For Respondent:

          James C. Bartlett, Hash, O'Brien and Bartlett,
Kalispell, Montana

**FILED**

Filed:    AUG 24 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  July 6, 1995

Decided:  August 24, 1995

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Molerway Freight Lines, Inc. (Molerway), appeals the decision of the Fourth Judicial District Court, Missoula County, enforcing a contract in favor of Rite-Line Transportation Services, Inc. (Rite-Line). We affirm.

We find the following issues, as rephrased by this Court, dispositive on appeal:

1. Did the District Court err in admitting parol evidence to determine the intent of the parties to the Buy-Sell Agreement?

2. Did the District Court err in determining that the Montana Public Service Commission (PSC) "approved" the transfer of Montana Intrastate Certificate of Public Convenience and Necessity No. 1136 (Certificate No. 1136) pursuant to the terms of the Buy-Sell Agreement?

3. Did the District Court err in determining that Molerway had waived the condition of PSC approval of Certificate No. 1136?

Molerway and Rite-Line are motor carriers operating intrastate trucking businesses in Montana. Intrastate trucking is regulated by the PSC. The PSC issues Montana Intrastate Certificates of Public Convenience and Necessity by which motor carriers are allowed to establish routes within Montana. Certificates can only be sold or transferred with PSC approval.

Rite-Line owned Certificate No. 1136 which authorized it to operate certain routes within the State of Montana. Molerway, a direct competitor of Rite-Line, sought to obtain Certificate No. 1136. Following negotiations, Molerway and Rite-Line agreed upon

2

a purchase price of $150,000. Molerway's attorney drafted a Buy-Sell Agreement. On February 13, 1991, Molerway and Rite-Line officials signed the Buy-Sell Agreement setting forth the terms of the transaction. Under the agreement, Molerway was required to pay $30,000 down and monthly payments of $5,427.27 until the $150,000 was paid off. The parties also executed a lease of Certificate No. 1136, allowing Molerway to take immediate possession of the certificate and ensuring that there was no interruption in carrier service.

The Buy-Sell Agreement was expressly conditioned on the PSC's approval of the transfer. The Buy-Sell Agreement provided, in part:

> In the event the transfer is not approved and approval cannot be obtained within a reasonable length of time after hearing on the application, then this Agreement shall be considered null and void, and any funds received by Seller for payment of the purchase price shall be refunded to the Buyer.

Following execution of the Buy-Sell Agreement, the parties applied to the PSC for approval of the transfer of the certificate.

On March 15, 1991, the PSC approved the lease of the certificate. At that time, representatives of the PSC indicated that portions of Certificate No. 1136 which were duplicative of other routes already covered in Molerway's other certificates would be cancelled.

Both parties feared that the PSC's cancellation of duplicate authorities would jeopardize the Buy-Sell Agreement. Rite-Line had a security interest in Certificate No. 1136. Rite-Line feared that if the duplicate authorities were cancelled upon approval by the

3

PSC, it would lose its security for the remaining payments due on the Buy-Sell Agreement.

On June 4, 1991, Molerway's attorney wrote the PSC concerning the cancellation of duplicate authorities. The letter stated, in part:

> The payoff on this Agreement is only two years from the date the Commission approves of the transfer. Perhaps the Commission would postpone the deletion of the duplicate authorities until the outstanding balance has been paid off. That way, Rite-Line is protected and the Commission would be relieved of interfering with a contract.

> Molerway does not want to delay the transfer of this authority, nor does it expect to default on the Agreement. Perhaps we could have a meeting with Rite-Line, Molerway and the Commission to weigh the alternatives.

Rite-Line made a similar request that the cancellation of duplicate authorities be delayed until the Buy-Sell Agreement was fulfilled.

On July 22, 1991, the PSC issued Order No. 6051 in which it approved the transfer of Certificate No. 1136. Pursuant to the requests of Molerway and Rite-Line, the PSC delayed any action on cancelling duplicate authorities until Certificate No. 1136 was paid off. As of the time of trial, the PSC had not ruled on what it considered to be a "duplicate authority." Neither Molerway nor Rite-Line presented evidence at trial to establish precisely what the PSC would consider to be a "duplicate authority." Therefore it is unclear what routes, if any, would be cancelled pursuant to PSC Order No. 6051. PSC Order No. 6051 states:

> It is the Commission's policy to cancel duplicating motor carrier authority upon a sale or transfer. . . . However, the Commission has determined that the unique circumstances of this case justify the recognition of an exception. Specifically, the "Buy-Sell Agreement"

4

between Rite-Line and Molerway establishes a security interest in PSC Certificate No. 1136 and its subparts during the payment period of two (2) years. If Certificate No. 1136 were to be cancelled, the collateral identified in the Agreement would cease to exist. Therefore, the Commission will defer cancelling the duplicating authority for two (2) years solely for these reasons, approve the transfer with the conditions described below.

Although the PSC had done what Molerway had specifically requested in its June 4, 1991 letter, Molerway objected to Order No. 6051. Molerway stopped payment on its August installment on the Buy-Sell Agreement, and on September 4, 1991, sent Rite-Line a notice of rescission of contract. Molerway requested the return of the $30,000 down payment and first two installments in exchange for returning Certificate No. 1136 to Rite-Line. Rite-Line refused to rescind the contract.

On January 29, 1992, Molerway filed a complaint in the Fourth Judicial District Court, Missoula County, seeking to rescind the Buy-Sell Agreement and to have returned to it money paid pursuant to that agreement. Rite-Line answered and counter-claimed, seeking specific performance of the Buy-Sell Agreement.

Following the June 7-8, 1994 trial, the District Court held in favor of Rite-Line. The court determined that the PSC's order constituted an "approval" of the Certificate transfer and that by Molerway's course of conduct, it waived its right to rescind the contract due to the cancellation of duplicate authorities. Molerway appeals from the decision of the District Court.

5

## Issue 1

Did the District Court err in admitting parol evidence to determine the intent of the parties to the Buy-Sell Agreement?

Molerway argues that the District Court erred by allowing the introduction of parol evidence during trial in order to determine the intent of the parties. Molerway insists that the Buy-Sell Agreement was clear and unambiguous on its face. Therefore, the contract should have been construed strictly by its terms and no parol evidence concerning the parties' intent should have been allowed.

We review district court evidentiary rulings to determine if the court abused its discretion. State v. Passama (1993), 261 Mont. 338, 863 P.2d 378. The language contained in a contract controls its interpretation if the contract is clear and unambiguous. Hennen v. Omega Enterprises, Inc. (1994), 264 Mont. 505, 508-09, 872 P.2d 797, 799; §§ 28-3-401 and 28-2-905, MCA. In Montana Bank of Circle v. Meyers and Son (1989), 236 Mont. 236, 769 P.2d 1208, we stated:

> The rule has long been that where no ambiguity exists in the written documents, no parol evidence may be taken, (citation omitted) and the duty of the court is simply to apply the language as written.

Montana Bank, 769 P.2d at 1212.

However, when ambiguities exist in a contract, the court may look to parol evidence to ascertain the intent of the parties. In Monte Vista Co. v Anaconda Co. (1988), 231 Mont. 522, 755 P.2d 1358, we stated:

6

> An ambiguity exists when a contract is subject to two interpretations and parol testimony can be used to determine what the parties intended. (Citations omitted.) However, intent of the parties is only looked to when the agreement in issue is not clear on its face. (Citation omitted).

Monte Vista, 755 P.2d at 1362.

A review of the record reveals that the Buy-Sell Agreement was not clear and unambiguous on its face. While the agreement specifically conditioned validity of the contract on the PSC's "approval" of the transfer, the agreement does not define what will constitutes an "approval." Specifically, it is unclear whether "approval" as limited by Order No. 6051 would constitute "approval" under the contract.

Also, the agreement contains contradictory language concerning the purpose of the transfer. The agreement reads, in the recital, "[i]n buying this permit, it is the Buyer's intention to serve the area and customers previously served by the Seller." This is the only clear expression of Molerway's intent. This purpose is not inconsistent with and would not be affected by the PSC's cancellation of duplicate authorities. However, elsewhere in the agreement, the contract appears to contemplate the transfer of Certificate No. 1136 as an asset rather than merely as a means by which to service Rite-Line's customers.

We conclude that these contradictory provisions render the Buy-Sell Agreement ambiguous. As such, parol evidence was properly admissible in order to determine the intent of the parties. We hold that the District Court did not abuse its discretion in

7

admitting parol evidence in order to determine the intent of the parties.

## Issue 2

Did the District Court err in concluding that the PSC "approved" the transfer of Certificate No. 1136 pursuant to the terms of the Buy-Sell Agreement?

Molerway argues that approval by the PSC was a condition precedent expressly stated in the Buy-Sell Agreement. Molerway claims that by issuing Order No. 6051 which stated duplicate authorities would be cancelled in two years, the PSC did not "approve" Certificate No. 1136 and all its subparts as was a condition precedent to the contract. Because the condition precedent did not occur, Molerway insists it is not bound by the Buy-Sell Agreement.

Rite-Line argues that PSC Order No. 6051 was an "approval" of the certificate transfer. Rite-Line contends that the PSC's asserted right to cancel duplicate authorities following completion of the contract does not render the PSC's decision a denial. The District Court agreed, concluding that Molerway's failure to object and acquiescence to the PSC's cancellation of duplicate authorities following fulfillment of the contract illustrated Molerway's intent that cancellation of duplicate authorities would not result in a "denial" of the transfer application.

Rite-Line also insists that Molerway received what it bargained for: authority to use the routes designated in Certificate No. 1136, elimination of Rite-Line as a competitor along those

8

routes, and the assurance that Certificate No. 1136 would not be sold to another motor carrier.

We will not overturn a district court's findings of fact unless they are clearly erroneous. Interstate Production Credit Assoc. v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285. We review district court conclusions of law to determine if the court's interpretation of the law was correct. Steer, Inc. v Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

As discussed above, when a contract is not clear and unambiguous on its face, the court must look elsewhere to discern the intent of the parties. Monte Vista, 755 P.2d at 1362. In this case, the evidence establishes that Molerway did not consider the cancellation of duplicate authorities to be a "denial" of the transfer application. During the March 1991 meeting to discuss the lease of Certificate No. 1136, Molerway did not object to the PSC's suggestion that it would cancel duplicate authorities. Molerway made two installment payments on the contract after it had actual knowledge of the PSC's intention to cancel duplicate authorities. Molerway also encouraged, or at the very least acquiesced to, the PSC's decision to cancel duplicate authorities in its June 4, 1991 letter. By its actions and failure to act, Molerway has manifested its intent that the PSC's cancellation of duplicate authorities would not render the decision a denial of the transfer application.

We conclude that the District Court's finding that the PSC's cancellation of the duplicate authorities did not amount to a denial of the transfer application was not clearly erroneous.

9

Issue 3

Did the District Court err in determining that Molerway waived the condition of PSC approval of the certificate transfer?

As an alternative reason for enforcing the contract, Rite-Line argued, and the District Court concluded, that even if the PSC's cancellation of duplicate authorities constituted a denial of the transfer, Molerway waived its right to rely on the condition precedent of PSC approval. The District Court concluded that Molerway's course of conduct from the March 1991 meeting of the parties with the PSC until issuance of the PSC's Order No. 6051 manifested Molerway's intent not to require PSC approval of Certificate No. 1136 in its entirety.

Waiver is a voluntary and intentional relinquishment of a right. McGregor v. Cushman/Mommer (1986), 220 Mont. 98, 714 P.2d 536. In McGregor, this Court stated:

> Waiver is the voluntary, intentional relinquishment of a right. (Citation omitted.) A waiver of a right of action will be declared only when the party clearly manifests such an intention. (Citations omitted.)

McGregor, 714 P.2d at 543.

The record reveals that Molerway voluntarily and intentionally relinquished its right to rely on the PSC's approval of the certificate transfer in its entirety. Molerway made no objections when it first learned that the PSC was considering cancelling duplicate authorities. Molerway made two installment payments on the contract while it knew or should have known that the PSC was considering cancelling the duplicate authorities.

10

Most persuasive was the June 4, 1991 letter from Molerway to the PSC. In this letter, Molerway not only acquiesced to the PSC's cancellation of duplicate authorities, but encouraged such a cancellation. In the letter, Molerway's attorney stated:

> Perhaps the Commission would postpone the deletion of the duplicate authorities until the outstanding balance has been paid off. That way, Rite-Line is protected and the Commission would be relieved of interfering with a contract.
>
> Molerway does not want to delay the transfer of this authority, nor does it expect to default on the Agreement. [Emphasis added.]

Despite Molerway's claim that it merely intended to "buy some time" by sending this letter, we conclude that the letter is susceptible to only one interpretation. Molerway stated it wanted to postpone the PSC's cancellation of the duplicate authorities until after expiration of the Buy-Sell Agreement. Molerway further stated that it did not intend to default on the Buy-Sell Agreement despite the cancellation of the duplicate authorities.

We conclude that Molerway's course of conduct, particularly its letter of June 4, 1991, manifested a voluntary and intentional relinquishment of its right to rely on the condition precedent of the PSC's approval of Certificate No. 1136 in its entirety in order to void the contract. We hold the District Court's conclusion of law was correct. Affirmed.

_J. A. Turnage_
Chief Justice

11

We concur:

_Karla M. Gray_

_[signature]_

_William E. Hunter_

_Troy Treuweiler_
Justices