**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**IN THE MATTER OF TYE B., TREY B.,
and TRENT B., children,**

**STATE OF NEW MEXICO, ex rel., CHILDREN
YOUTH AND FAMILIES DEPARTMENT,**

Petitioner-Respondent,

v.                                              **NO. 31,226**

**SHANTA R. B.**,

Respondent-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI
John Julio Romero, District Judge**

Jane B. Yohalem
Santa Fe, NM

for Petitioner

New Mexico Children, Youth & Families Department
Daniel J. Pearlman
Rebecca J. Liggett
Santa Fe, NM

for Respondent

## DISPOSITIONAL ORDER OF REVERSAL

{1} This matter having come before the full Court on a petition for writ of certiorari, the Justices having considered the briefs, oral argument, and other relevant file materials, and otherwise having fully informed themselves on the issues and applicable law as raised by the parties; and

{2} Each Justice having concurred that there is no reasonable likelihood that a written decision or opinion would affect the disposition of this appeal or advance the law of the State; and

{3} Acting within this Court's discretion under Rule 12-405(B)(1) NMRA to dispose of a case by order, decision, or memorandum opinion rather than formal opinion because "[t]he issues presented have been previously decided by the supreme court or court of appeals."

**IT IS ADJUDGED THAT:**

{4} The New Mexico Children, Youth, and Families Department (CYFD) petitioned for the termination of the parental rights of Shanta R. B. (Mother) as to her three children, Tye B., Trey B., and Trent B., pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005). At trial, CYFD offered Mother's most recent caseworker as its only witness to show, by clear and convincing evidence, that the children had

been neglected and "that the conditions and causes of the neglect . . . [we]re unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist [Mother] in adjusting the conditions that render[ed] her] unable to properly care for the child[ren]." *Id.* Mother, in turn, offered her own testimony, as well the testimony of her substance abuse therapist, to show that the underlying conditions of neglect had been addressed and would remain so for the foreseeable future. The district court ruled in favor of CYFD and terminated Mother's parental rights as to all three children.

{5} Mother appealed to the Court of Appeals, challenging whether there was sufficient evidence submitted at trial to allow the district court to terminate her parental rights. The Court of Appeals affirmed the district court's decision in a memorandum opinion on summary calendar. *State ex rel. Children, Youth & Families Dep't v. Shanta R. B.*, No. 28,403, slip op. at 3 (N.M. Ct. App. June 25, 2008). We accepted Mother's petition for writ of certiorari to review the propriety of the Court of Appeals' disposition of this case on summary calendar, in which the trial transcript is not reviewed by the court and neither briefing nor oral argument is allowed. Rule 12-210(D) NMRA.

{6} "The question of whether an individual was afforded due process is a question

of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266; *See State ex rel. Children, Youth & Families Dep't v. Lorena R.*, 1999-NMCA-035, ¶ 22, 126 N.M. 670, 974 P.2d 164 ("[I]n passing upon claims that the procedure utilized below resulted in a denial of procedural due process, we review such issues de novo.").

{7}     "An appellate court cannot make a determination of the sufficiency of the evidence when it has not reviewed the evidence presented at trial unless the facts of the docketing statement clearly establish no doubt of the sufficiency of the evidence." *Garcia Lopez v. State*, 107 N.M. 450, 450, 760 P.2d 142, 142 (1988). Furthermore, the Court must accept the facts in the docketing statement as true, unless contested. *Id.* at 450-51, 760 P.2d at 142-43; *State v. Sisneros*, 98 N.M. 201, 202, 647 P.2d 403, 404 (1982). Thus, the Court must constrain its review to the facts in the docketing statement, unless contested, and should those facts give any doubt as to the sufficiency of the evidence, the Court must assign the case to a calendar in which the full transcripts are reviewed.

{8}     We recognize that the Court of Appeals is not completely dependent on the docketing statement. Rule 12-210(A) provides, "based upon the docketing statement or statement of the issues and record proper, the court shall assign the case to either

4

the general, legal or summary calendar." The parties are notified of the calendar assignment by means of a notice of proposed disposition, which typically contains a summary of the facts and a legal analysis of the issues. Rule 12-210(D)(2) and (3).

{9} We also understand that **t**he Court of Appeals, in practice, uses the record proper to test the accuracy of trial counsel's facts as outlined in the docketing statement. This practice carries certain risks of error, but it is especially problematical when reviewing for sufficiency of the evidence, because the Court risks relying on facts that were not evidentiary matters before the trial court. The appellant is given an opportunity to respond to the notice of proposed disposition by writing a memorandum in opposition, but is "restricted to arguing only issues contained in the docketing statement." Rule 12-210(D)(3). Mother availed herself of this opportunity to object to the Court's reliance on matters outside the evidentiary record. *Shanta R. B.*, No. 28,403, slip op. at 3. In Mother's memorandum in opposition, she "contend[ed] that [The Court of Appeals] . . . misapprehended the docketing statement's description of the evidence in the record . . . ." She also reiterated that "there simply [was] not substantial evidence in the record to support termination of Mother's parental rights" by pointing out that

"[t]here was no evidence the housing was not stable and long-term[,]" and "[t]he only contrary evidence in the record[,]" as to Mother's substance abuse, was the CYFD caseworker's testimony that she believed Mother's treatment efforts were motivated "by a desire to get her children returned to her . . . [and] that Mother might not continue to remain sober if Children were returned . . . ."

{10}    Additionally, Mother stated in her memorandum that "[t]here was no evidence showing that Mother was not capable of meeting [the children's] needs[,] . . . [n]or was there any evidence tying Mother's prior care of them to their current difficulties." Mother even attacked specific citations to the record proper as outside the evidentiary record. Mother dismissed those citations by stating, "given that these claims are not in the record, they cannot be relied on by this Court in its review to determine whether clear and convincing evidence in the record support[ed] the decision of the trial court." By citing to the record proper to test the thoroughness of the docketing statement, the Court may effectuate some important concessions from the appellant. But in the end, the Court must accept the evidence as described in the docketing statement and in the memorandum in opposition. The Court, then, must be extremely careful when deciding whether to adopt the proposed disposition and must avoid relying on facts it does not know to be in the actual evidentiary

6

record.

{11} Mother points to various citations to the record proper, and not the hearing record, in the Court of Appeals' memorandum opinion adopting its proposed disposition. We observe that many of these citations are substantiated by the docketing statement itself. For example, the Court stated, "The children came into custody from a meth-, cocaine-, marijuana-house that Mother was living in with a number of relatives." *Shanta R. B.*, No. 28,403, slip op. at 5. The docketing statement itself stated, "Albuquerque Police . . . discovered marijuana and a plastic bag containing a residue of methamphetamine in the home which [Mother] and her three (3) sons shared . . . ."

{12} Other Court of Appeals citations to the record proper appear to be simply background facts explaining the proceedings, which do not impact the issues raised on appeal. The Court stated, for example, "[t]here had been prior removals of the two older Children based on the same allegation of inadequate shelter, there had been prior substantiated referrals, as well as previous efforts to assist Mother, with in-home parenting skills and other services offered, including parenting skills services and substance abuse counseling." *Shanta R. B.*, No. 28,403, slip op. at 5-6. Mother had already stipulated to the finding of neglect and was only contesting the

termination of her parental rights on the grounds that she had addressed the underlying concerns and that CYFD had not made reasonable efforts to assist Mother. Thus, any account of the previous neglect had no legal effect on the issues presented, and we determine it was not error for the Court to refer to those matters in the record.

{13} The Court also properly cited to the record proper to review the nature of CYFD's allegations contained in the petition. For example, the Court cited to CYFD's petition in the record proper that "[t]he petition indicated that Mother had had positive UA's as late as May 2007, Mother's engagement with substance abuse treatment was 'minimal,' 'sluggish' and 'intermittent,' and 'opportunities for progress have been missed at the expense of the children's permanency.'" *Id.* at 7.

{14} Our concern, however, is with the Court's reliance on purported facts related to the merits of the district court's termination of parental rights decision, based on non-evidentiary documents in the record proper which did not appear in the docketing statement. The Court indicated its reliance on these non-evidentiary matters several times in the memorandum opinion: "In the face of challenges or parenting them, Mother has been ineffective or unable to deal with the Children's present behaviors of hyperactivity, defiance, and anxiety," *Id.* at 9-10, and "the UA

8

testing personnel eventually refused to go to her house after a few visits, finding it extremely foul-smelling, cluttered, and unkempt." *Id.* at 6.

{15} Mother contested these citations in her memorandum in opposition: "These matters were simply not of record in this proceeding and Mother, therefore, had no opportunity to defend against these claims." An appellate court cannot rely on evidence outside the trial record, even though it may be in the record proper. *See Flowers v. White's City, Inc.*, 114 N.M. 73, 76, 834 P.2d 950, 953 (Ct. App. 1992) ("[T]he presence of documents in the record proper does not automatically mean that the information they contain is evidence of record or that it is legally admissible.").

{16} The Court of Appeals further erred by citing to a document issued after the district court ordered the termination of Mother's parental rights: "[T]he fact remains that the Children have special needs, and they are presently thriving in foster care in a family that wishes to adopt them"; "[t]he Children live together, the two older boys are excelling at sports, and they are attending school or day care." *Shanta R. B.*, No. 28,403, slip op. at 10. These facts are relevant to "the physical, mental and emotional welfare and needs of the child[ren]" and the adoptibility of the children, which are factors to be considered in deciding whether to terminate a parent's rights. *In re Termination of Parental Rights of Eventyr J.*, 120 N.M. 463, 467, 902 P.2d

9

1066, 1070 (Ct. App. 1995) (quoting Section 32A-4-28(A)). The Court of Appeals' reliance on these citations from post-judgment reports is a violation of Mother's due process rights. *See Flowers*, 114 N.M. at 75, 834 P.2d at 952 ("'To allow findings to be . . . supported in court by new evidence would substitute the [appellate] court for the [trial court].'" (citation omitted)).

{17}     Beyond noting the problem of the improper reliance on facts outside of the evidentiary record in reviewing for sufficiency of the evidence, we observe that the docketing statement raised genuine doubts about the sufficiency of the evidence that warranted a full transcript review. The docketing statement stated that CYFD's "sole witness was a newly assigned caseworker . . . [who] testified that the principle barriers to reunification were: (1) lack of safe and suitable housing; and (2) unaddressed substance abuse problems." According to the docketing statement, the caseworker also testified that Mother's "parenting ability *per se* was not the basis for CYFD seeking to terminate her parental rights[,]" although Mother "does have a little bit of trouble setting limits and being firm with them." The docketing statement also claimed the caseworker testified that Mother "had followed through with her housing application efforts and had moved into a new house with her newborn son, Tru B.," and that the house was "a very nice three (3) bedroom house

albeit a little messy but not unlivable."

{18} As for the substance abuse concern, Mother and her therapist testified that she "had overcome her addiction to cocaine and methamphetamine and . . . her prognosis for continued sobriety with respect to marijuana was good." Mother's therapist also testified that "she planned to discharge [Mother] from her care within ninety (90) days . . . [and] that [Mother] suffered from no known mental illness or cognitive deficiencies . . . ." The docketing statement also acknowledged that the caseworker, who "was not aware that [Mother] was continuing to address her substance issues" by seeing a drug-treatment therapist, nevertheless testified that Mother "had failed to address her substance abuse problem."

{19} An appellate court, in reviewing the sufficiency of the evidence underlying a district court's termination of parental rights, must "determine whether the fact finder could properly conclude [by clear and convincing evidence,]" *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 22, 132 N.M. 299, 47 P.3d 859, "that the conditions and causes of the neglect . . . [we]re unlikely to change in the foreseeable future." § 32A-4-28(B)(2). Accepting the allegations in the unchallenged docketing statement as true, there appears to have been scant evidence adduced at trial in favor of CYFD's allegations that Mother had not

11

addressed the underlying conditions of neglect and that the conditions were unlikely to change in the foreseeable future.

{20} Although the caseworker testified that, in her opinion, Mother had not sufficiently addressed her substance abuse problem, she admitted that Mother's housing situation had changed, that Mother was sufficiently caring for her newborn baby, that Mother had not tested positive for methamphetamine or cocaine for seven months, that Mother had not tested positive for marijuana for two months, and that she was unaware Mother was continuing to seek drug treatment with a therapist. Furthermore, Mother and her therapist testified as to her successful substance abuse treatment with plans of being released from therapy in the near future. Additionally, Mother testified that with her change in housing, it would be much easier to maintain the house in satisfactory condition without the rest of her family living with her.

{21} The combination of the heavy "clear and convincing" evidentiary burden for termination of fundamental parental rights, the serious questions raised about the nature and quantum of evidence presented at the hearing, and the fact that this was, at best, a close call for the district court and the appellate court to make, should have resulted in a full appellate review of the actual hearing record.

{22}     We hold that the Court of Appeals erred by considering facts not contained in the docketing statement and in considering facts that appear not to have been properly introduced at trial. The Court of Appeals also erred by disposing of this case on summary calendar, when a clear doubt as to the sufficiency of the evidence was raised by the docketing statement.

{23}     Nothing in this Order is meant to indicate any predisposition of this Court as to the appropriate ultimate result in this case. Like the Court of Appeals, we have insufficient information to make such a weighty decision of substantial importance to both Mother and her children. We also do not address the suggestion raised by counsel for CYFD at oral argument before this Court that there may be some merit in the parties' engaging in discussions aimed at either a settlement before final appellate resolution or by a stipulation to remand to the trial court for an updated evidentiary hearing to address the current factual and legal realities and the best interests of all concerned, given the passage of time in this matter. The parties are always free to seek such resolutions, either solely between themselves or with the aid of the mediation assistance that is made available by the Court of Appeals.

{24}     We reverse and remand to the Court of Appeals, with directions to place this matter on either the Court's general calendar or its expedited calendar, as the Court

13

may deem appropriate, and for further proceedings consistent with this opinion.

{25} **IT IS SO ORDERED.**


_____
**EDWARD L. CHÁVEZ, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**CHARLES W. DANIELS, Justice**