2003-NMSC-015

70 P.3d 1266

**STATE of New Mexico, ex rel., CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Petitioner,**

v.

**MAFIN M., Respondent–Respondent,**

and

**Ruth E. Kelly, Interested Party.**

**In the matter of Chance M., and Chad C., Children.**

**No. 27,017.**

Supreme Court of New Mexico.

May 28, 2003.

Daniel J. Pearlman, Children's Court Attorney Santa Fe, NM, for Petitioner.

Nancy L. Simmons, Law Offices of Nancy L. Simmons, P.C., Albuquerque, NM, for Respondent.

## OPINION

MAES, Chief Justice.

{1} The New Mexico Children, Youth and Family Services Department appeals from a judgment of the Court of Appeals reversing the district court's termination of Mafin M.'s (hereinafter "Mother") parental rights to her two young boys, Chad C. and Chance M. In a memorandum opinion, the Court of Appeals held that the district court violated Mother's procedural due process rights by holding a termination of parental rights hearing in her absence without determining if Mother had validly waived her appearance. *State ex rel. Children, Youth & Families Dep't v. Mafin M. (In re Chance M.)*, NMCA 20,904 (June 19, 2001). We granted certiorari to review whether Mother's procedural due process rights were violated by the district court. We reverse the Court of Appeals' decision and affirm the district court's order.

I.

{2} On April 6, 1996, Mother, who is mentally ill and a chronic substance abuser, tried to kill herself and her two boys, then ages three and six, by carbon monoxide poisoning. The next day, Mother called police requesting that authorities take custody of the boys so she could admit herself into a mental health facility for treatment of depression and substance abuse. Several days later, the Department filed a neglect and abuse petition against her in district court. She did not contest the petition, and the district court adjudicated the boys abused children under the Children's Code. In a dispositional order, the district court ordered her to comply with the Department's treatment plan, which required her to complete, among other things, an in-patient substance abuse treatment program, to remain substance-free, to submit to random urinalyses, and to participate in individual and family counseling. The district court was going to have her psychologically re-evaluated after she had "detoxed" to get "a more accurate picture of functioning and treatment recommendations."

{3} Initially, Mother complied with the treatment plan, and her condition began to improve. She was ordered to continue with her compliance at regular periodic review hearings. She moved for custody of the boys in August 1997. After hearing the motion, the district court concluded that she was making progress on the treatment plan, but that it was too early to return the boys to her custody based on its determination that people with substance abuse problems sometimes try to reenter a situation which contributed to their substance abuse problem too quickly. The district court denied her custody motion.

{4} Mother's attitude declined following the denial of her custody motion. She became a "defeatist." Her condition regressed, and her compliance with the treatment plan deteriorated in the year following the decision. She resumed her substance abuse. She

stopped submitting to urinalyses after she tested positive for drugs. Her visits with the boys became irregular and sporadic. She became unemployed and homeless, and she became involved in a violent relationship. At this point she was making no progress.

{5} On June 29, 1998, the Department moved to terminate Mother's parental rights, citing her "chaotic lifestyle, her substance abuse, her mental and emotional difficulties, [her] missing of visits, her unwillingness to abide by rules at visits, on-going domestic violence, her failure to comply with requests for urinalyses, her unemployment and lack of income, her medical infirmities and her criminal conduct." She responded by filing a motion in which she indicated that she planned on contesting the termination of her parental rights. The termination hearing was scheduled for December 16, 1998. In the meantime, at regular periodic review hearings she was ordered to comply with the treatment plan, including completing the in-patient substance abuse treatment program in which she was enrolled.

{6} On November 13, 1998, Mother's attorney moved to continue the termination hearing on the ground that he and Mother needed additional time to prepare for trial. She was scheduled to be released from the in-patient treatment program on the day of the hearing. His ability to communicate with her was limited by her participation in the in-patient treatment program. Over the objections of the Department, the district court granted the motion to allow Mother sufficient time to prepare her case for trial. She was discharged from the in-patient treatment program a short time later for non-compliance. Her condition deteriorated again. Her compliance with the treatment plan was minimal. She resumed her substance abuse. She stopped taking her medication. She was hospitalized twice for suicidal tendencies. She was not making any progress.

{7} On July 23, 1999, at a pretrial motions hearing, Mother's attorney moved for a continuance of the July 28, 1999, trial setting. Mother's attorney told the district court that Mother was not in any condition to assist him. She was very depressed and had been hospitalized a couple of times over the past few months. She was not taking her medication or getting treatment for her depression, and her substance abuse counseling was inadequate. He felt that she needed hospitalization and treatment. After telling him that the case was three years old, the district court asked him how much more time she needed before she would be able to assist him. He said he did not know, but she needed a minimum of seven to ten days to detoxify and stabilize. He said "the pendency of this matter only aggravates the situation." When the district court asked, "[I]sn't that going to happen again when we reset?" he said, "[i]t may very well." He told the district court that she needed a structured program, which she had not yet had. He said treatment could take ninety days or longer. When asked why he had waited until now to ask that she be psychologically evaluated, he said he waited because he did not realize how bad she was until the past few weeks. She had been difficult to communicate with, depressed, and suicidal. The district court denied the motion.

{8} On the morning of the July 28 termination hearing, Mother's attorney moved for a continuance on the grounds that Mother's condition prevented her from effectively assisting him in the preparation and presentation of her case. According to the motion, Mother needed "medical care and medication for her ... physical and mental conditions" and was "attempting to obtain medical treatment for alcohol abuse." Mother's psychiatrist wrote in a letter attached to the motion that she had tried to treat Mother the day before but could not ethically do so because Mother was inebriated. Mother's attorney said that he wanted enough time so that she could "recover to the point where she [could] understand the nature of the proceedings well enough [to] assist in the preparation and presentation of her case."

{9} The district court agreed with the parties that Mother had the right to participate in the proceedings, but wondered how long it would have to wait for her to stop drinking before she could participate. The case was already several years old. If a continuance was granted, the case would not be heard for at least another nine months

due to the court's heavy calendar. The boys, who were four and six when the case first started, were now seven and nine, and had had a "harrowing" experience while in the Department's custody. Mother had known about the termination hearing for thirteen months. Finding no reason that would justify a continuance, the district court denied the motion and proceeded with the termination hearing.

{10} Midway through the hearing, the guardian ad litem for the boys moved to compel Mother's testimony. Mother did not attend the hearing even though she knew about it. Mother's attorney took no position with regard to the motion, but he did not believe that Mother was in any condition to testify. He said she had "severe problems." She was distraught every time that he had spoken with her. When he spoke with her that morning, she was distraught and did not want to come to court. He felt that her condition would help no one. Mother's social worker told the district court that when she spoke with Mother that morning, Mother told her that she was not going to visit with the boys that day. When the social worker asked her if she was going to attend the hearing, Mother got really loud and said, "No. I am not going. I already told you that I am not going to go. I don't want to go and have to deal with that." The social worker said Mother sounded inebriated.

{11} The district court then heard evidence as to whether Mother was capable of testifying. Mother's psychiatrist testified that Mother would have a diminished capacity if she was not taking her medication, which she had not been doing. She would have disorganized thinking. Her condition would be worse if she was drinking. If she was drinking, she would not understand the questions that were being asked, and she would have a labile mood. She did not believe that it would be appropriate to have her testify. After hearing the evidence, the district court determined that forcing Mother to testify when she did not want to would be "counterproductive." She had told several people that she did not want to be involved. She would not have been receptive to any questions asked, and she would not have

been competent enough to testify if she had been drinking. The district court offered to let the guardian ad litem and Mother's attorney submit a statement "as to what she would say" for its consideration. The hearing resumed, but was continued to August 10, 1999, after the hearing went beyond the two days allotted.

{12} When the hearing resumed on August 10, Mother's attorney moved for a continuance. Mother did not attend the hearing. Mother's attorney told the district court that Mother was "undergoing medical treatment for alcohol abuse and depression" and was still unable to assist him. He said it would be three to four weeks before the medication would be effective. He wanted enough time "to help her recover to the point where she [would] understand the nature of the proceedings well enough [to] assist in the preparation and presentation of her case. . . ." The district court denied the motion. The guardian ad litem then moved the district court to compel Mother's testimony. The district court denied the guardian ad litem's request, stating that Mother knew about the hearings, she was probably in an in-patient program getting treatment, and that her attorney said she was not competent to testify. The hearing resumed.

{13} After hearing the evidence, the district court found clear and convincing evidence supporting the termination of Mother's parental rights to the boys. The district court determined that Mother was unable to adjust the conditions which made her incapable of raising the boys despite the reasonable efforts of the Department to assist her. Consequently, Mother's parental rights were terminated.

{14} Mother appealed the district court's decision to the Court of Appeals. The Court of Appeals reversed the ruling of the district court and concluded that Mother's procedural due process rights were violated when the district court terminated her parental rights in her absence without first determining whether she had waived her right to appear. The Department appealed to this Court. On appeal, the Department essentially argues one issue: whether Mother's procedural due process rights were violated when her paren-

tal rights were terminated. We hold that Mother's due process rights were not violated.

### II.

{15} We first address the issue of waiver. We agree with the Department that the Court of Appeals incorrectly focused on whether Mother had waived her right to contest the termination of her parental rights when it determined that her right to due process was violated. We do not believe that waiver was an issue in the case. However, even if it were, we would still find no violation of Mother's right to contest the termination. In *State ex rel. Children, Youth & Families Dep't v. Stella P.*, 1999–NMCA–100, 127 N.M. 699, 986 P.2d 495, the Court of Appeals held that a mother's due process rights were violated when the trial court terminated her parental rights based upon its conclusion that she had waived those rights by not appearing at the termination hearing. The mother, who was mentally ill, did not attend the termination hearing "because it was Halloween and she felt ill and afraid." *Id.* ¶ 5. Because of the mother's absence, the Department did not present its case, but instead made a proffer as to what its evidence would have shown. *Id.* ¶ 6. Mother's attorney and her guardian ad litem both agreed that the Department would have been able to prove its case. *Id.* ¶¶ 7, 8. Neither her attorney nor the guardian ad litem presented any evidence explaining Mother's absence. *Id.* ¶¶ 7–9. Nor did they inform the trial court of her continued opposition to the termination of her parental rights. *Id.* ¶ 9. None of these matters were inquired into by the trial court. *Id.* Presuming that Mother had waived her parental rights, the trial court terminated those rights based upon the Department's proffer. *Id.* ¶ 9. The Court of Appeals reversed the termination and held that "in light of Mother's established mental illness, it was improper for the children's court to presume upon Mother's absence and counsels' inconclusive statements that Mother ' "acquiesce[d] in the loss of [her] fundamental rights." ' " (*Id.* ¶ 31) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)) (quoting *Ohio Bell Tel. Co. v. Pub. Util.*

*Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937)) (alterations in original).

{16} No such waiver was presumed in this case. On the contrary, in spite of her absence, Mother's opposition to the termination of her parental rights was known by the parties and the district court throughout the proceedings. Her opposition to the termination was sufficiently litigated by her attorney. Her parental rights were terminated only after the Department had presented its case and had met the appropriate standard of proof. Thus, the Court of Appeals incorrectly concluded that the district court was required to determine if Mother had waived her parental rights.

### III.

{17} The question raised on appeal is whether Mother's due process rights were violated when the district court terminated her parental rights. The question of whether an individual was afforded due process is a question of law that we review de novo. *State ex rel. Children, Youth & Families Dep't v. Lorena R. (In re Ruth Anne E.),* 1999–NMCA–035, ¶ 22, 126 N.M. 670, 974 P.2d 164.

{18} The Children's Code gives the court the authority to terminate the parental rights of an abusive or neglectful parent. NMSA 1978, § 32A–4–28 (2001); *Roth v. Bookert (In re Adoption of J.J.B.),* 119 N.M. 638, 646–47, 894 P.2d 994, 1002–03 (1995). However, because the right to raise one's child is a fundamental right protected by the Fourteenth Amendment to the United States Constitution, termination proceedings must be conducted in a constitutional manner. *See Ronald A. v. State ex rel. Human Servs. Dep't (In re Ronald A.),* 110 N.M. 454, 455, 797 P.2d 243, 244 (1990). As such, a parent's legal relationship with his or her child cannot be severed without due process of law. *Santosky v. Kramer,* 455 U.S. 745, 747–48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Due process of law requires that termination proceedings be conducted with "scrupulous fairness" to the parent. *Ruth Anne E.,* 1999–NMCA–035, ¶ 19, 126 N.M. 670, 974 P.2d 164 (quoted authority and quotation marks omitted). "Procedural due process mandates that a person be accorded an opportunity to

be heard at a meaningful time and in a meaningful manner." *Id.* ¶ 17 (quoted authorities and quotation marks omitted).

■ {19} We employ the balancing test articulated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine if due process was satisfied in a termination proceeding. *State ex rel. Children, Youth & Families Dep't v. Anne McD. (In re Megan L.),* 2000–NMCA–020, ¶ 18, 128 N.M. 618, 995 P.2d 1060 (applying the *Mathews* balancing test to parental rights termination proceedings). The *Mathews* test requires the weighing of Mother's interest; the risk to Mother of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest. *See Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

{20} Under the *Mathews* test, Mother's interest in "retain[ing] a parental relationship with [her] child[ren] is a fundamental right that merits strong protection." *State ex rel. Children, Youth & Families Dep't v. B.J. (In re T.J.),* 1997–NMCA–021, ¶ 11, 123 N.M. 99, 934 P.2d 293. It is a right "far more precious ... than property rights." *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *see also Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (stating that the right to family integrity is an important right that is protected by the Fourteenth Amendment). The State has an equally significant interest in protecting the welfare of children. *Anne McD.,* 2000–NMCA–020, ¶ 23, 128 N.M. 618, 995 P.2d 1060. Given these strong countervailing interests, the decisive issue centers on the second factor of the *Mathews* test.

{21} Applying the *Mathews* test, we conclude that Mother's due process rights were not violated by the procedures employed. In termination proceedings, the parent has the right under due process to "a fair opportunity to be heard and to present a defense." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.,* 2000–NMCA–025, ¶ 12, 128 N.M. 701, 997 P.2d 833. The process must allow the parent to have the opportunity for meaningful participation. *See Ruth Anne E.,* 1999–NMCA–035, ¶ 25, 126 N.M. 670, 974 P.2d 164. In the present case, the district court utilized several procedures to ensure Mother's meaningful participation in the proceedings. *See id.* ¶ 17 (holding that when the parent is involuntarily prevented from physically attending termination proceedings due to incarceration, the court should "fashion an alternative procedure to permit the parent to respond to the matters presented by the state"). Five months after termination proceedings were commenced, the district court continued the case on Mother's motion to allow her the opportunity to participate and prepare her case for trial. By the time the termination hearing was held, Mother had thirteen months to prepare for the termination hearing following the commencement of termination proceedings. During the termination hearing, the district court also inquired into Mother's current ability to participate. Both Mother's attorney and her psychiatrist told the court that Mother was too incapacitated to participate. Mother had also told several people that she did not want to be involved. After it became apparent that Mother was incapable of participating, the court allowed her attorney to admit her testimony by stipulation. Her attorney declined the court's proposal. As the record demonstrates, the district court made every reasonable attempt to allow her to participate meaningfully in the proceedings.

{22} Mother argues that the district court should have utilized the alternative procedures described in *Ruth Anne E.* In *Ruth Anne E.,* the Court of Appeals addressed the scope of due process in cases where the parent is incarcerated. *Id.* ¶ 25. The court noted that the parent has the right to meaningful participation in the proceedings. *Id.* "This right includes the right to review the evidence presented against him or her, present evidence on his or her behalf, and an opportunity to challenge the evidence presented." *Id.* As the court noted, courts may employ a wide array of procedures to facilitate these rights, including continuing the case, recessing the case to allow the parent to review the evidence and consult with his or her attorney, and allowing the parent to present testimonial evidence by telephone or deposition. *Id.* ¶ 29. We do not believe that

such procedures would have been practical in this case. Mother was suffering from severe mental illness and acute substance abuse. She needed an indeterminate amount of time to prepare herself to be in a position to participate in the proceedings. Thus, the procedures discussed in *Ruth Anne E.* were simply unworkable given her mental and physical condition.

{23} We believe that the probable value of any additional procedural safeguards such as the continuance that Mother wanted would have been minimal in this case. Mother had already been given sufficient time to detoxify and stabilize. She had shown no signs of improvement since 1997. There was also no guarantee that, even had a continuance been granted, Mother's condition would have improved.

{24} Any further delays in the proceedings would have been unwarranted and would have infringed upon the State's compelling interest in the welfare of the boys. "When balancing the interests of parents and children, the court is not required to place the children indefinitely in a legal holding pattern, when doing so would be detrimental to the children's interests." *State ex rel. Human Servs. Dep't v. Wayne S. (In re Dennis S.),* 108 N.M. 486, 488, 775 P.2d 252, 254 (Ct.App.1989). In the present case, the boys had a harrowing experience while in the Department's custody. They suffered severe sexual abuse, and one of the boys was exposed to a sexually transmitted disease. They required counseling because of their ordeal. Also, if another continuance were granted for Mother, the case would not be heard for at least several more months because of the court's heavy docket. The amount of time required for Mother to improve was uncertain, and there was no guarantee that she would improve. Mother's attorney said her treatment could take ninety days or longer. The boys would have been in the Department's custody for four years by the time the case was heard. Because it is important for children to have permanency and stability in their lives, termination proceedings should not continue indefinitely. *See Ruth Anne E.,* 1999–NMCA–035, ¶ 30, 126 N.M. 670, 974 P.2d 164. Granting Moth-

er another continuance "would force the children to wait for the uncertain possibility that [she], despite [her] persistent and long-standing disregard of the children's interest, may remedy past faults which have rendered the children neglected." *Reuben O. v. Dep't of Human Servs.,* 104 N.M. 644, 650–51, 725 P.2d 844, 850–51 (Ct.App.1986).

{25} We believe that the procedures employed comported with due process requirements. *See Ruth Anne E.,* 1999–NMCA–035, ¶ 26, 126 N.M. 670, 974 P.2d 164 (stating that due process requires notice, the opportunity to be heard, the opportunity to defend against the accusations, the opportunity to challenge the opposition's evidence, the opportunity to present favorable evidence, the right to legal representation when required by law, and the right to a fair hearing before an impartial tribunal). Mother was represented by a competent attorney who vigorously litigated her case. He confronted and cross-examined the Department's witnesses. He challenged the Department's evidence. He was allowed to present witnesses and evidence on Mother's behalf, including a statement from Mother. Mother was also provided with a hearing before an impartial tribunal that was vigilant in protecting Mother's due process rights. The court knew that Mother opposed the termination. The court made every effort to accommodate Mother's interests at the hearing and only allowed evidence which did not violate Mother's rights. Mother's parental rights were terminated only after the Department had presented clear and convincing evidence to support the termination. *See Stella P.,* 1999–NMCA–100, ¶ 34, 127 N.M. 699, 986 P.2d 495 (requiring the Department to present clear and convincing evidence to support termination of the parent's parental rights); NMSA 1978, § 32A–4–29(L) (2001). Thus, Mother's due process rights were not violated.

## IV.

{26} We conclude that the district court did not violate Mother's due process rights when it terminated her parental rights. Accordingly, we reverse the Court of Appeals' decision below and affirm the district court.

{27} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, and EDWARD L. CHAVEZ, Justices.