**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-067**

**Filing Date: June 15, 2017**

**Docket No. A-1-CA-35616**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH AND FAMILIES
DEPARTMENT,**

      **Petitioner-Appellee,**

**v.**

**RAYMOND D.,**

      **Respondent-Appellant,**

**and**

**ALMA F.,**

      **Respondent,**

**and**

**IN THE MATTER OF ADRIAN F.,**

      **a Child.**

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jennifer E. DeLaney, District Judge**

Children, Youth & Families Department
Charles E. Neelley, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Appellee

Law Office of Jane B. Yohalem
Jane Bloom Yohalem

Santa Fe, NM

for Appellant

Law Office of David H. Gorman PC
David H. Gorman
Silver City, NM

Guardian Ad Litem

## OPINION

**VIGIL, Judge.**

**{1}**     The joint motion for rehearing filed by the parties is granted. The formal opinion filed in this case on May 8, 2017, is hereby withdrawn, and this opinion is substituted in its place.

**{2}**     Father appeals from a judgment terminating his parental rights to Child for neglect pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005). The sole issue presented is whether the district court erred in concluding that termination is in Child's best interests on the basis of substantial, admissible evidence. We affirm.

## BACKGROUND

**{3}**     Child was placed in the custody of the New Mexico Children, Youth and Families Department (CYFD) on August 14, 2013, when Child was eight years old, and the causes and conditions that brought Child into CYFD custody were for physical abuse, medical neglect, emotional abuse, and substance abuse by Mother. Mother's parental rights were also terminated, but she has not appealed. We discuss facts and circumstances related to Mother's termination only insofar as they relate to Father's appeal.

**{4}**     At all times during the case, Child needed intensive mental health treatment, medication, and services. Since being taken into CYFD custody, Child went back and forth from the Peak Psychiatric Residential Treatment Facility (Peak), and Bonem Home Facility (Bonem), a mental health residential treatment center. The only exceptions were for one week when Child was placed in a foster home and when Child briefly lived with Father in October 2013.

**{5}**     Father began serving a federal prison term in 2010, and in July 2013, shortly before Child was taken into CYFD custody, Father was released on probation. In October 2013, Child was released from Peak and temporarily placed with Father. During that time, Father had great difficulty attending to Child's needs. While living with Father and his paternal grandparents, Child punched his grandparents, tried to punch and bite Father, and needed to

2

be physically restrained by Father to prevent Child from Child banging his head on the floor. Father testified that he felt Child needed a higher level of care, and that he also needed training on how to meet Child's needs. On November 2, 2013, Father was arrested on new state charges, and CYFD took Child back into custody. Father remained incarcerated and had no further contact with Child.

{6}     On November 13, 2013, Mother pled no contest to neglect of Child, and Mother was ordered to participate in a treatment plan. Child remained in CYFD custody for 2014 while CYFD worked with Mother; however, Mother failed to comply with the treatment plan.

{7}     Father was facing a ten-year potential penitentiary sentence on the state charges stemming from his November 2013 arrest, and on this basis, Father stipulated to a finding that reunification with Child was futile on February 19, 2015. The district court accepted the stipulation, made a finding that reunification was likely futile, and ordered that CYFD was relieved of providing treatment services to Father. *See* NMSA 1978, § 32A-4-22(C)(1) (2016) (providing that the district court may determine that reasonable efforts at reunification are not required to be made when it finds that the efforts would be futile). On the same day, Father also pled no contest to neglect of child due to his incarceration. *See* NMSA 1978, § 32A-4-2(E)(4) (2009, recodified by 2017 N.M. Laws, ch. 64, § 2, as § 32A-4-2(F)(4)) (defining a neglected child in part as a child whose parent "is unable to discharge that person's responsibilities to and for the child because of incarceration[.]"). On April 13, 2015, Father unexpectedly received a sentence of two-and-one-half years instead of ten years on the pending state charges, with a scheduled parole date of June 2016.

{8}     CYFD filed its motion to terminate parental rights as to both Mother and Father on June 5, 2015, on the basis of neglect. At the time of the termination of parental rights (TPR) hearing on January 22, 2016, Child was residing at Bonem, and had been there for approximately five months.

{9}     Shasta Rael, Child's therapist at Bonem, was responsible for Child's individual therapy and weekly family therapy sessions, which Mother participated in by phone. Under cross-examination by Child's guardian ad litem (GAL), Rael was asked her opinion about Child's demeanor after the family therapy sessions, and Rael answered that Child was usually calm, but confused about whether he would be reunited with his parents or be adopted. Having testified on direct examination, that Mother's participation in the weekly family therapy sessions had been inconsistent, Rael added in the GAL's cross-examination that when there is inconsistency in his family therapy sessions, Child becomes emotionally volatile, he demonstrates self-harm, and he has conflicts with his peers. The GAL then asked Rael whether it would be in Child's best interests to continue family therapy with his Mother, and Father objected on the basis that this was not a proper question for lay opinion testimony, and that no foundation was laid to qualify Rael as an expert to answer the question. The GAL responded that he was only asking for her opinion as a layperson, which went to the weight of her testimony and not its admissibility. The district court overruled Father's objection. Rael then testified that Child is confused about his future and what the

3

future holds for him, and that family therapy was dependent on the outcome of the district court's decision. Hereinafter, we refer to this statement as the "testimony objected to." In Father's cross-examination that followed, Rael testified that it was her therapeutic recommendation that it was in Child's best interests that he temporarily not have contact with Father.

**{10}**    At the end of the TPR hearing, the district court noted that "June in [Child's] life is still really far away" and said it could not make the case go on any longer. The district court also specifically ruled "that the confusion in Child's life is leading him to self-harm and Child's continued limbo caused the Child confusion." Father asked if this finding regarding Child's self-harm was based on Rael's testimony, and the district court answered, "Yes, that his being in limbo is causing him confusion and is causing him self-harm." Consistent with its answer, the district court's written findings include a finding that "The [C]hild's confusion about what is happening is having continued negative consequences on him and the longer he is in legal limbo the longer and more pronounced these negative consequences are."

**{11}**    The judgment terminating parental rights on the basis of neglect was filed on April 26, 2016. In the judgment terminating parental rights, the district court found: "Giving primary consideration to the physical, mental, and emotional welfare and needs of [C]hild, including the likelihood of adoption if rights are terminated, CYFD has demonstrated by clear and convincing evidence that [C]hild's best interests require that the parental rights of [Father] should be terminated"). Father appeals.

**DISCUSSION**

**{12}**    Father's sole contention on appeal is that the district court's finding on the central issue in this case—that child's best interests required prompt termination of Father's parental rights—is based on the testimony objected to, which was erroneously admitted. For the following reasons, we disagree.

**Standard of Review**

**{13}**    Section 32A-4-28(A) directs, "In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child, including the likelihood of the child being adopted if parental rights are terminated." We have no New Mexico authority directly on point specifying our standard of review. However, we are persuaded by the logic and reasoning of *In re Adoption of Randolph*, 227 N.W.2d 634, 637 (Wis. 1975), an adoption case. *Randolph* states:

> The finding [of best interests] is a mixed question of fact and law. There are certain determinations of historical facts which must be sustained unless they are clearly against the great weight and clear preponderance of the evidence. The determination of where the best interests of the children lie is thus a

question of fact in the sense that precise determinations must be made about specific factors such as age, finances of the parties, discipline questions, and psychological factors. The application of the correct standards for determining the best interests of the child and the ultimate conclusion of where the best interests of the children lie is a matter for legal determination by the trial court, reviewable as such on appeal.

*Id.*

**{14}**    In our review of the district court's finding of Child's best interests as a mixed question of law and fact, we engage in a two-step analysis. First, we determine whether substantial evidence supports the district court's findings of fact. *See State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 22, 132 N.M. 299, 47 P.3d 859 (stating that in our appellate review, we determine whether substantial evidence supports the district court's decision). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). In determining whether substantial evidence supports the district court's finding, we view the evidence in the light most favorable to the judgment. *Id*. Second, we determine whether that evidence supports a finding of best interests, a question of law which we review de novo. *See Stanley J. v. Cliff L.*, 2014-NMCA-029, ¶ 8, 319 P.3d 662 (stating that in applying the facts to determine whether "extraordinary circumstances" exist under the Kinship Guardian Act, we are presented with a question of law, and our standard of review is de novo).

**Analysis**

**{15}**    Under Section 32A-4-28(B)(2), parental rights "shall" be terminated if "the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child." The elements to be proven here are that: (1) Child was neglected; (2) the conditions and causes of Child's neglect were unlikely to change in the foreseeable future; and (3) CYFD made reasonable efforts to assist Father in adjusting the conditions that rendered Father unable to properly care for Child. *See State, ex rel. Children, Youth & Families Dep't v. Nathan H.*, 2016-NMCA-043, ¶ 32, 370 P.3d 782, *cert. denied,* 2016-NMCERT-___ (May 3, 2016). Father's no contest plea satisfied the first element. *See State ex rel. Children, Youth and Families Dep't v. Melvin C.*, 2015-NMCA-067, ¶ 13, 350 P.3d 1251 (stating that the court may make a determination of neglect on the basis of a valid admission). In addition, when Father stipulated to a finding of futility, CYFD was not required to make reasonable efforts to assist Father in adjusting the conditions that rendered Father unable to care for Child. *See State ex rel. Children, Youth & Families Dep't v. Vanessa C.,* 2000-NMCA-025, ¶ 14, 128 N.M. 701, 997 P.2d 833 (recognizing that a finding of futility results in the removal of a person's expectation to the department's reasonable

5

assistance).

**{16}** The appeal before us centers on whether CYFD proved that prompt termination of Father's parental rights was in Child's best interests. If this question is answered affirmatively in the circumstances of this case, the second element required to terminate Father's parental rights was likewise satisfied. As we have already observed, Section 32A-4-28(A) directs, "In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child, including the likelihood of the child being adopted if parental rights are terminated." In this case, proof of Child's best interests hinges on resolution of factual questions, namely: (1) whether Father could remedy the conditions of neglect quickly enough in the future to meet Child's needs; and (2) the related question of whether Father should have been allowed more time to attempt to remedy the causes and conditions of neglect. We therefore turn to Father's arguments.

**{17}** Father vigorously contends that the testimony objected to was only admissible through a properly qualified expert, and that the district court erred in admitting the testimony as lay opinion testimony. CYFD concedes that the testimony objected to was inadmissible as lay opinion testimony. We therefore assume, without deciding, that the testimony objected to was not admissible. We further assume that the district court's finding that Child's "confusion about what is happening is having continued negative consequences on him and the longer he is in legal limbo the longer and more pronounced these negative consequences are" is based only on the testimony objected to. We therefore proceed to determine whether the district court's finding of Child's best interests is otherwise supported by admissible evidence.[1]

**{18}** In pertinent part, the district made findings that family therapy with Mother and Child was scheduled by the therapist to occur on a weekly basis, but Mother's participation was sparse and inconsistent, and outside of therapy, Mother only had some contact with Child by telephone. This inconsistent contact led Child "to be confused and he lacks understanding what is in his future, being reunification with his parents or adoption" and the consequences of this inconsistent contact were that Child "became more emotionally volatile, demonstrated self-harm and low tolerance regarding conflict with his peers." When Father was released from prison and Child was placed with him in October 2013, for two or three weeks, "[C]hild experienced aggressive and violent behaviors." Father was then

---

[1]CYFD argues that Father only preserved an objection to the testimony objected to, and that we can consider the balance of Rael's testimony in determining whether the district court finding of Child's best interests is supported by substantial evidence. We agree. "If a proper objection is not made, the evidence may be considered in the same manner as any other relevant evidence and has sufficient probative value to support a finding. . . . Failure to object to the admission of evidence operates as a waiver." *N.M. Att'y Gen. v. N.M. Pub. Serv. Comm'n*, 1984-NMSC-081, ¶ 10, 101 N.M. 549, 685 P.2d 957 (citations omitted).

arrested on November 2, 2013 on new criminal charges, and has had no contact with Child. Father was scheduled to be paroled in June 2016, five months after the TPR hearing. However, since Father had not participated in family therapy, it was not currently in Child's best interests to have contact with Father, and Father had not been able to participate in any classes due to his maximum security classification, and being on lockdown at the penitentiary. The time period from the date of the TPR hearing to Father's anticipated parole date six months later, was "really far away" for Child, in Child's experience. Finally, and importantly, the district court found that Father had "shown an inability to follow the laws of the State of New Mexico and it is uncertain that inability would change."

**{19}** The foregoing findings, which do not rely on the testimony objected to, support the district court's finding that it was in Child's best interests to terminate Father's parental rights. This case spans over three years of Mother's inconsistent participation in her treatment plan and Child's therapy, Father's incarceration and lack of communication with Child, and Child's continued residency in psychiatric and residential facilities. It was not in Child's best interests to make Child wait five more months for a placement that might be temporary given Father's recidivism and inability to attend to Child's special needs. Child would have to wait five months for Father to be released from the penitentiary, and then wait for an additional indeterminate period of time for Father to receive training that might or might not succeed, in the face of possible reoffending by Father. Child waited for over three years for his parents to remedy the causes of his neglect, and "the court is not required to place the [Child] indefinitely in a legal holding pattern, when doing so would be detrimental to the [Child's] interests." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 24, 133 N.M. 827, 70 P.3d 1266 (internal quotation marks and citation omitted).

**CONCLUSION**

**{20}** The judgment terminating Father's parental rights is affirmed.

**{21}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**STEPHEN G. FRENCH, Judge**

7