This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39126

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**

     Petitioner-Appellee,

v.

**MARTIN L.,**

     Respondent-Appellant,

**IN THE MATTER OF EZEKIEL L., and EMMANUEL L.,**

     Children.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Dustin K. Hunter, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

JulieAnne Hufstedler Leonard, PC
JulieAnne Hufstedler Leonard
Capitan, NM

Guardian Ad Litem

**DECISION**

**HANISEE, Chief Judge.**

**{1}** Martin L. (Father) appeals the district court's termination of his parental rights to Ezekiel L. and Emmanuel L. (collectively, Children). Finding no error by the district court, we affirm.

**BACKGROUND**

**{2}** Because the parties are familiar with the facts and procedural posture of this case and it is a non-precedential expedited bench decision, we set out only the pertinent facts and law in connection with the issues analyzed, reserving further discussion of the facts where necessary to our analysis. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

**{3}** On June 28, 2018, the State of New Mexico's Children, Youth, and Families Department (CYFD) filed an abuse and neglect petition on behalf of Ezekiel, alleging that Father's use of methamphetamine rendered him unable or unwilling to care for or provide a stable home environment for Ezekiel. Ezekiel was subsequently placed in CYFD custody on June 26, 2018. Ezekiel was adjudicated to be a neglected child as to Father on August 28, 2018, and Father subsequently entered a plea of no contest as to neglect of Ezekiel. Following the disposition hearing on August 28, 2018, the district court determined that it was in Ezekiel's best interest that he remain in CYFD custody. In its stipulated judgment and disposition, the district court noted that CYFD had made "reasonable efforts to identify, locate and give notice to all grandparents and other relatives and to conduct home studies on any appropriate relative who expresses an interest in providing care for" Ezekiel. The district court adopted a case treatment plan (the treatment plan) and ordered Father to "make reasonable efforts to comply with the [treatment] plan and achieve the desired outcomes" thereof, while also ordering CYFD to "make reasonable efforts to implement" the treatment plan.

**{4}** The treatment plan required that Father (1) participate in drug/alcohol assessment and follow related recommendations; (2) complete an inpatient or outpatient drug/alcohol program; (3) participate in random drug testing; (4) complete a mental health assessment and follow related recommendations; (5) attend couples counseling with Ezekiel's mother to develop appropriate communication skills; (6) attend, participate in, and complete a parenting class; (7) maintain housing that is clean, safe, and has working utilities; (8) obtain and maintain employment; (9) attend and participate in visitations with Ezekiel; and (10) attend anger management groups or individual therapy.

**{5}** Emmanuel, Ezekiel's younger brother, was born on October 4, 2018, and placed in CYFD custody two days later, following CYFD's filing of an abuse and neglect petition on his behalf. Emmanuel was adjudicated to be a neglected child as to Father on January 15, 2019. Following the disposition hearing, the district court found that it was

in Emmanuel's best interest that he remain in CYFD custody. The district court again adopted a treatment plan with which Father was expected to comply. This treatment plan was nearly identical to the previous version with one additional requirement that Father participate in medication management and take medication as prescribed.

**{6}** On February 5, 2019, Father appeared before the district court for initial judicial review regarding Emmanuel and judicial review regarding Ezekiel. The district court found that CYFD had made reasonable efforts to implement the previously ordered treatment plan and that Father was exercising good faith efforts in working the plan despite not being in full compliance therewith. On May 7 and May 21, 2019, Father appeared before the district court for a judicial review hearing regarding Children collectively. The district court found that, while CYFD had continued to make reasonable efforts to implement the treatment plan, Father was not in full compliance with the treatment plan.

**{7}** An initial permanency hearing regarding Children was held on August 27, 2019. The district court found that Father had not made good faith efforts to follow the treatment plan, citing his failure to (1) stay in frequent contact with CYFD; (2) participate in either his recovery group or individual therapy since May 2019; (3) participate in a scheduled drug screen; (4) participate in couples therapy; (5) attend any medication management appointments since May 2019, despite recommendations to do so and despite continuing to experience hallucinations; (6) participate in parenting classes; and (7) maintain housing with working utilities. The district court ordered Children's permanency plan to be changed to adoption and directed Father to immediately undergo a drug screening.

**{8}** On September 26, 2019, CYFD filed a motion to terminate Father's parental rights. The termination hearing was held over two days on December 10, 2019, and February 14, 2020. The district court heard testimony from multiple witnesses, including (1) Miriam Uribe-Lira, the CYFD permanency planning worker assigned to the family, who testified about the treatment plan and the extent of Father's compliance with it; (2) Melissa Bethany, a psychiatric nurse practitioner who testified as an expert witness in medication management, as well as her diagnoses and treatment of Father for schizophrenia; and (3) Nathan Padilla, a clinical social worker and drug and alcohol abuse counselor who testified as an expert witness in mental and behavioral health regarding Father's involvement in substance abuse recovery and family parenting programs.

**{9}** On May 29, 2020, the district court issued its decision and order terminating Father's parental rights to Children. In light of the evidence and testimony presented at the termination hearing, the district found in pertinent part that "CYFD made reasonable efforts to assist Father in stabilizing, breaking free from the methamphetamine addiction and obtaining the skills and resources to safely reunify with . . . [C]hildren. Father refused to exercise good faith efforts to work his plan and take advantage of the resources that were offered." Father's appeal followed. We reserve further discussion of

relevant testimony as well as the district court's factual findings where necessary to our analysis.

**DISCUSSION**

**{10}** "Before a court may terminate parental rights based on abuse or neglect, it must find by clear and convincing evidence: (1) that the child was abused or neglected, (2) that the conditions and causes of the abuse and neglect were unlikely to change in the foreseeable future, and (3) that [CYFD] made reasonable efforts to assist the parent in adjusting the conditions which rendered the parent unable to properly care for the child." *State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 30, 141 N.M. 692, 160 P.3d 601 (alterations, internal quotation marks, and citation omitted); *see* NMSA 1978, § 32A-4-28(B)(2) (2005). On appeal, Father does not challenge the termination order as it relates to the district court's findings regarding the first two requirements—that Children were neglected or that the conditions and causes of neglect and abuse are unlikely to change in the foreseeable future. Rather, Father argues that the district court erred in terminating his parental rights because (1) CYFD did not provide clear and convincing evidence of its efforts to assist Father in addressing the causes and conditions that rendered him unable to properly care for and that resulted in the removal of Children, and (2) termination is not in the best interest of Children. We address each argument in turn.

**I.     The District Court Did Not Err in Finding Clear and Convincing Evidence That CYFD Made Reasonable Efforts to Assist Father in Adjusting the Conditions That Rendered Him Unable to Properly Care for Children**

**{11}** Father argues that CYFD did not make reasonable efforts to assist him in addressing the causes and conditions, including his mental health, that rendered him unable to properly care for Children and that resulted in their removal. Specifically, Father asserts that he made significant progress in fulfilling the requirements of the treatment plan during the first half of 2019 and that subsequent challenges he faced in adhering to the treatment plan "were likely the result of his chronic mental health conditions that needed specialized focus and treatment." Father states that his mental health conditions were the cause of his ongoing substance abuse and that "[w]ith the appropriate type of psychiatric medications and regular medical treatment by a professional psychiatrist," Father would have been able to ameliorate the causes and conditions that caused the removal of Children from his custody.

**{12}** Father further claims that CYFD should have "placed Father under the full-time care of a psychiatrist," and contends that the record does not reflect that he was given adequate inpatient treatment to address his substance abuse and schizophrenia. Father claims that CYFD's recommendations that he attend individual therapy and participate in medication management were "not enough" to address his mental health issues and asserts that if CYFD "had been stronger in its approach by ensuring that Father was placed on appropriate psychiatric medications, it is likely that his underlying mental health condition would have been improved significantly[.]"

**{13}** "The standard of proof in cases involving the termination of parental rights is clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. "Clear and convincing evidence is . . . evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted). "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. Finally, this Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *Vanessa C.*, 2000-NMCA-025, ¶ 24.

**{14}** When reviewing the district court's findings regarding the reasonableness of CYFD's efforts to assist a parent in remedying the conditions and causes of neglect, we consider the totality of the circumstances. *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814. "Efforts to assist a parent may include individual, group, and family counseling, substance abuse treatment, mental health services, . . . and other therapeutic services." *Id.* (internal quotation marks and citation omitted). "What constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Patricia H.*, 2002-NMCA-061, ¶ 23. It is not the duty of this Court "to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *Id.* ¶ 28.

**{15}** Here, the district court heard testimony from Miriam Uribe-Lira that she created the treatment plan for Father, she discussed the treatment plan with him, and Father confirmed with Ms. Uribe-Lira that he understood the requirements of the treatment plan. Ms. Uribe-Lira testified that after creating the treatment plan, she initially had frequent contact with Father but began hearing from Father less frequently beginning in May 2019. When Ms. Uribe-Lira did not hear from Father, she would call his cell phone or go to his house to make contact with him. Regarding Father's substance abuse, Ms. Uribe-Lira stated that at the start of Ezekiel's case, Father was not consistently attending his recovery group sessions and admitted to relapsing in October and November 2018. Although Father maintained his sobriety from November 2018 through February 2019, he stopped attending recovery group sessions in May 2019, tested positive for methamphetamine in August 2019, and admitted to using methamphetamine in December 2019. Ms. Uribe-Lira advised Father that it was

important that he continue attending recovery programs in order to achieve and maintain sobriety and suggested that Father begin attending a different recovery facility.

**{16}**    Ms. Bethany testified that she prescribed Risperidone, Benztropine, and Mirtazapine to Father as part of his treatment for paranoid schizophrenia. Father declined to take his prescribed medications and instead used medical cannabis as treatment, despite being advised by Ms. Bethany that the prescribed medications would be more effective in treating the symptoms of his schizophrenia. While Father contends that Ms. Bethany allowed him to utilize medical cannabis to treat his schizophrenia, our review of the record makes clear that Ms. Bethany advised Father not to rely on medical cannabis to treat his condition and only prescribed medical cannabis because Father refused to take his prescribed medications. Ms. Bethany also testified that between July 25, 2018, and December 9, 2019, Father had twenty-one appointments scheduled with her but attended only nine.

**{17}**    When considering the reasonableness of CYFD's efforts to assist Father in adjusting the conditions that rendered him unable to properly care for Children and that resulted in the removal of Children, we emphasize that CYFD "is only required to make reasonable efforts, not efforts subject to conditions unilaterally imposed by the parent." *Patricia H.*, 2002-NMCA-061, ¶ 27. Where, as here, a parent does not comply with recommendations from relevant professionals and does not fulfill the requirements of a court-ordered treatment plan, instead making unilateral choices that are contrary to treatment advice, we cannot attribute subsequent termination of parental rights to some ambiguous failure or shortcoming on the part of CYFD without specific evidence thereof. *Compare Keon H.*, 2018-NMSC-033, ¶ 43 (holding that CYFD made reasonable efforts when it prepared a treatment plan for the father, went over treatment plan with him, and scheduled appointments for the father's psychosocial assessment that he later failed to attend), *with State ex rel. Children, Youth & Families Dep't v. Joseph M.*, 2006-NMCA-029, ¶¶ 20-22, 139 N.M. 137, 130 P.3d 198 (holding that CYFD did not make reasonable efforts when it did not create or implement a treatment plan and did not communicate to the father that a failure to change certain behavior and living conditions would result in termination of his parental rights). Father does not direct our attention to any specific evidence that could demonstrate CYFD's failure to make reasonable efforts to adjust the conditions that rendered him unable to properly care for Children, instead asserting only general complaints that CYFD should have done more.

**{18}**    Our review of the record indicates that CYFD made reasonable efforts to address the causes and conditions that rendered Father unable to properly care for Children, which ultimately resulted in their removal, and that Father failed to fully engage with services provided by CYFD. The evidence presented at Father's termination hearing established that Ms. Uribe-Lira discussed the treatment plan with Father, and he understood its requirements. Ms. Uribe-Lira attempted to stay in contact with Father when he was not maintaining communication with her, and she provided Father with additional referrals for recovery groups he could attend. Despite these efforts, Father was inconsistent in his attendance of required recovery group sessions and did not maintain his sobriety. *See Patricia H.*, 2002-NMCA-061, ¶ 23. Similarly, Ms. Bethany

advised Father in accordance with his treatment plan that attempting to treat his schizophrenia with medical cannabis would not be as effective as treating with the medications prescribed to him. Father declined to take his prescribed medications despite medical advice to the contrary. Viewing this evidence in the light most favorable to the decision below, and without any evidence from Father to the contrary, we hold that the district court did not err in finding clear and convincing evidence that CYFD made reasonable efforts to address the causes and conditions—namely his schizophrenia and ongoing substance abuse—which rendered Father unable to properly care for Children.

## II. The District Court Did Not Err in Finding Termination to Be in Children's Best Interest

{19}    Father argues that termination of his parental rights is not in Children's best interest, specifically contending that Father's bond with Children would justify allowing him more time to fulfill the requirements of the treatment plan, alleviate his mental health conditions, and eventually reunite with Children. We are unpersuaded.

{20}    In a proceeding to terminate parental rights, the district court must "give primary consideration to the physical, mental and emotional welfare and needs of the child, including the likelihood of the child being adopted if parental rights are terminated." *State ex rel. Children, Youth & Families Dep't v. John R.*, 2009-NMCA-025, ¶ 27, 145 N.M. 636, 203 P.3d 167 (quoting § 32A-4-28(A)). While "a parent has a fundamental interest in the care, custody, and control of his or her children[,]" that interest does not give a parent "absolute rights in their children; rather, parental rights are secondary to the best interests and welfare of the children." *John R.*, 2009-NMCA-025, ¶ 27 (internal quotation marks and citation omitted). "When balancing the interests of parents and children, the court is not required to place the children indefinitely in a legal holding pattern, when doing so would be detrimental to the children's interests." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 24, 133 N.M. 827, 70 P.3d 1266 (internal quotation marks and citation omitted).

{21}    The district court's findings regarding Children's best interest present a mixed question of law and fact that we address by completing a two-step analysis. *See State ex rel. Children, Youth & Families Dep't v. Raymond D.*, 2017-NMCA-067, ¶ 14, 404 P.3d 15. "First, we determine whether substantial evidence supports the district court's findings of fact." *Id.* "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "In determining whether substantial evidence supports the district court's finding, we view the evidence in the light most favorable to the judgment." *Id.* "Second, we determine whether that evidence supports a finding of best interests, a question of law which we review de novo." *Id.*

## A. Substantial Evidence Supports the District Court's Findings of Fact

**{22}**    In its order terminating Father's parental rights, the district court made the following findings of fact relevant to our analysis: (1) Father had a bonded relationship with Children, but he had been unwilling to comply with the treatment plan and had not demonstrated his ability to provide a safe, stable, and loving home for Children; (2) Father's continued use of methamphetamine was harmful to Children and prevented him from being able to adequately care for them; (3) Father did not complete his therapeutic assistance with clinical social worker Nathan Padilla; (4) Father suffered from hallucinations that occurred at least weekly; (5) Father ceased taking his prescribed medications despite being advised to do so, opting instead to unsuccessfully treat his hallucinations with medical cannabis; (6) despite attending some counseling sessions, Father's substance use persisted; (7) Father lived with his parents in a home that had been damaged by fire and was uninhabitable and unfit for Children; (9) Father did not have a job, and no evidence was presented to suggest Father's employment status would change in the near future.

**{23}**    We conclude that the district court's findings are supported by substantial evidence. The district court heard from Mr. Padilla who testified as to Father's inconsistent participation in counseling, substance abuse recovery, and family parenting programs, as well as Father's history of continued substance abuse since November 2017. In addition to her testimony discussed above, Ms. Uribe-Lira also testified that Father's home environment was not appropriate for Children as of January 10, 2020, and that Father had been unemployed since at least 2018. Ms. Uribe-Lira also testified that termination was in Children's best interest because it would give them a sense of permanence. Incorporating the testimony offered by Ms. Bethany as discussed above and viewing the relevant testimony in the light most favorable to the decision below, we conclude that the district court's findings of fact are supported by substantial evidence in the form of testimony offered at Father's termination hearing.

**B.    Substantial Evidence Supports the District Court's Finding of Children's Best Interest**

**{24}**    In its order terminating Father's parental rights, the district court found that "[b]ased on the totality of the circumstances and giving consideration to the mental and emotional welfare of [Children] and the likelihood of adoption of both of them, it is in the best interest of [Children] that the parental rights" of Father be terminated as to Children. Having concluded above that substantial evidence supported the district court's relevant findings of fact, we similarly conclude that substantial evidence supports the district court's legal conclusion that termination of Father's parental rights was in Children's best interest.

**{25}**    Father was unable to maintain his sobriety and refused medication prescribed to him as treatment for his mental health conditions. Father did not have a job and did not live in an environment suitable for Children. Moreover, Children have spent most of their lives in CYFD custody, Ezekiel and Emmanuel having been placed in foster care when they were seven months old and two days old, respectively. Additionally, Children are currently in an adoptive placement and are bonded with their foster parents. We do not

overlook the fact that Father had a bond with Children and had intermittent success in complying with the treatment plan. However, given the extensive history concerning Father's ongoing substance abuse and unwillingness to follow medical advice related to his mental health, as well as the undeniable evidence heard by the district court in support of its findings and conclusions, we cannot assign error to the district court's finding that termination was in Children's best interest. To do so would inevitably place Children in the type of indefinite legal limbo we strive to avoid, while awaiting the possibility that Father might remedy the persistent and longstanding concerns that originally resulted in termination. *See Mafin M.*, 2003-NMSC-015, ¶ 24 (explaining that where there was no guarantee that the mother's mental health and substance use would improve at all or within a known time frame, allowing further delays in proceedings would not be in the children's best interest). We therefore hold that the district court did not err in terminating Father's parental rights to Children.

**CONCLUSION**

**{26}** For the above reasons, we affirm.

**{27}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**