1999-NMCA-141

992 P.2d 317

**STATE of New Mexico, ex rel., CHILDREN, YOUTH & FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**In the Matter of STEVEN, Naomi, Santana and Joseph R. and Brenda G., and concerning Rosa R., Respondent–Appellant.**

No. 19,696.

Court of Appeals of New Mexico.

Oct. 13, 1999.

Angela L. Adams, Chief Children's Court Attorney, Roy E. Stephenson, Children's Court Attorney, NM Children, Youth & Families Dep't, Santa Fe, for Appellee.

Jane Bloom Yohalem, Santa Fe, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Rosa R. (Mother) appeals the termination of her parental rights to her children, Steven, Naomi, Santana, and Joseph R., and Brenda G. Mother contends that she was denied due process of law when the termination hearing was held in her absence after she had been involuntarily deported to Mexico. We agree that under the circumstances of this case, Mother's right to meaningfully defend against the termination of her parental rights was not sufficiently protected. We reverse and remand for further proceedings.

## FACTS

{2} Mother's five children were taken into custody by the Children, Youth & Families Department (CYFD) on May 15, 1997. At the time, the children ranged from seven to fifteen years of age. On May 19, 1997, CYFD filed a petition alleging that Mother had abused and neglected the children. Mother pled no contest to the allegations of neglect. She was present and represented by court-appointed counsel at the adjudicatory hearing. On August 13, 1997, the court found "[t]he children ... are neglected children as defined in [NMSA 1978, § 32A-4-2(E) (1999) ] by reason of the acts of [Mother] in that the children are without proper parental care and control necessary for the children's well being because of the faults or habits of [Mother], in particular, inhalant abuse." On that date, the court entered judgment that the children were neglected and approved a treatment plan.

{3} On January 14, 1998, CYFD alleged that Mother was making little or no progress with the treatment plan. On February 19, 1998, only six months after the plan was approved, CYFD moved to terminate Mother's parental rights. The court scheduled the termination of rights hearing for April 20, 1998. Because she would be incarcerated at that time, Mother requested, and the trial court ordered, that she be transported from jail to court for the April 20 hearing. Subsequently, Mother, still incarcerated, moved for a continuation of the April 20 hearing because she was "unable to fully assist her counsel at the present time." The trial court granted this motion and reset the hearing for May 29, 1998.

{4} Mother was released from jail on or about April 30, 1998, but was immediately transferred to a deportation center. She was deported on May 4. Between the time of her release from jail and the time of her deporta-

tion, she spoke with her attorney by telephone several times, but there is nothing in the record indicating the content of those conversations other than that she told her attorney she was going to be deported. There was no further communication between Mother and her attorney after May 4. Mother was not present at the May 29 hearing on the Department's motion to terminate her parental rights but was represented by counsel.

{5} We relate additional facts as necessary in our discussion.

## DENIAL OF DUE PROCESS

{6} Mother contends she was denied her constitutional right to due process by the trial court's failure to arrange for her to participate in her termination of parental rights hearing. We agree that under the circumstances of this case Mother was denied due process. We review Mother's claim de novo. *See State ex rel. Children, Youth & Families Dep't v. Stella P.*, 1999–NMCA–100, ¶ 13, 127 N.M. 699, 986 P.2d 495.

{7} Mother concedes she did not preserve this issue by bringing it to the attention of the trial court. Normally, a party is precluded from raising an issue on appeal unless the trial court had an opportunity to rule on it. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."); Rule 12–216(A) NMRA 1999. We may, however, review issues that were not preserved when they involve fundamental error. *See* Rule 12–216(B)(2). Failure to allow a parent to defend against the termination of her parental rights is fundamental error. *See Stella P.*, 1999–NMCA–100, ¶ 12, 127 N.M. 699, 986 P.2d 495. We therefore turn to the merits of Mother's appeal.

{8} Before the hearing on the termination of Mother's parental rights, Mother had either been present or at least shown interest in being present at the relevant hearings. She was present in person (and pled no contest) at the hearing to determine if her children were neglected. She appeared in person for the periodic review hearing on February 5, 1999. She applied for an order to transport her from the jail to the April 20 hearing and later moved to continue that hearing because she could not fully assist her counsel. She did not appear for the December 10, 1997, hearing regarding the actions of one of the fathers of the children, but that hearing did not directly concern her rights to the children.

{9} On May 27, 1998, the trial court held an adjudicatory hearing concerning the alleged father of one of the children. At that hearing, counsel for all the parties indicated they were ready for the hearing on May 29. Mother's trial counsel, who is not her counsel on appeal, did not object to holding the hearing as scheduled. He did not tell the trial court at that time that Mother had been deported, nor did he make any request for Mother to be allowed to participate in some way.

{10} At the May 29 hearing, counsel for CYFD informed the trial court that he understood Mother had been deported to Mexico. The court asked Mother's counsel when he had last heard from Mother. Counsel told the court about the phone calls he had received, with the last phone call being on May 4. The court asked no further questions about Mother's absence. Counsel did not request that the hearing be continued so that Mother could participate by telephone or deposition. The trial court proceeded to consider the merits.

{11} Mother's due process rights include the right to review the evidence presented by CYFD, to consult with her attorney, and to present evidence in person or by telephone or deposition. *See State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999–NMCA–035, ¶¶ 27–29, 126 N.M. 670, 974 P.2d 164. While it is possible for a parent to waive these rights, we are unwilling to assume that Mother waived her rights in this case because none of the parties presented evidence of waiver to the trial court. *See Stella P.*, 1999–NMCA–100, ¶ 21, 127 N.M. 699, 986 P.2d 495. This is especially true in view of Mother's manifest interest in participating in the other hearings.

{12} We are aware that *Stella P.,* which was not filed until June 22, 1999, was not available to the trial court or the parties at the time of the hearing concerning the termination of Mother's parental rights. Nevertheless, we hold that the trial court had a responsibility to inquire into whether Mother had waived her due process rights. *See Stella P.,* 1999–NMCA–100, ¶ 21, 127 N.M. 699, 986 P.2d 495 ("Minimum consideration of due process requires the children's court to inquire explicitly and on the record as to whether Mother validly intended to waive her right to contest the termination."). If the parties were not prepared to address the issue, the trial court should have ordered a brief continuance. Here, such a continuance would have given the parties an opportunity to propose arrangements for Mother to participate even though she could not be physically present, *see Ruth Anne E.,* 1999–NMCA–035, ¶¶ 28–29, 126 N.M. 670, 974 P.2d 164 to develop evidence as to whether Mother had voluntarily waived her due process rights, *see Stella P.,* 1999–NMCA–100, ¶¶ 30–31, 127 N.M. 699, 986 P.2d 495 or to gather evidence that reasonable efforts had been made to contact Mother without success, *cf. In re Dependency of A.G.,* 93 Wash.App. 268, 968 P.2d 424, 428–30 (1999) (holding mother's due process rights were not violated when her appointed counsel was allowed to withdraw and hearing was held without mother, because the record showed mother did not inform counsel of her whereabouts after moving, thereby frustrating counsel's efforts to contact her, and because mother was properly served with notice of the termination hearing).

{13} We recognize that Mother's right to custody of her children is "constitutionally protected." *In re Ronald A.,* 110 N.M. 454, 455, 797 P.2d 243, 244 (1990). But the State, acting through CYFD, also "has a compelling interest in the welfare of children, and the relationship between parents and their children may be investigated and terminated by the [S]tate, provided constitutionally adequate procedures are followed." *Oldfield v. Benavidez,* 116 N.M. 785, 791, 867 P.2d 1167, 1173 (1994). We do not suggest that this matter be delayed unreasonably if Mother cannot be found or if she cannot make up her mind on the course she wishes to follow. We leave to another day a decision about the length of time that is reasonable to delay proceedings. *Cf. Ruth Anne E.,* 1999–NMCA–035, ¶ 29, 126 N.M. 670, 974 P.2d 164 (suggesting a thirty-day continuance to see if father would be released from jail within that time).

{14} CYFD argues that a delay such as we have described impermissibly impinges upon the State's compelling interest in the welfare of the children and absolves Mother of any responsibility to take action herself when she knew the date of the termination hearing. However, we balance the State's interests, the parent's interests, and the risk of erroneous deprivation of the parent's interests under the procedures used compared with "the probable value, if any, of additional or substitute procedural safeguards." *Stella P.,* 1999–NMCA–100, ¶ 15, 127 N.M. 699, 986 P.2d 495 (quoting *Ruth Anne E.,* 1999–NMCA–035, ¶ 21, 126 N.M. 670, 974 P.2d 164 and employing the well-established due process analysis of *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)) (internal quotation marks omitted). We do not believe taking the steps we have indicated "will unduly hinder proceedings to terminate parental rights." *Id.* ¶ 26, 127 N.M. 699, 986 P.2d 495 But it will more fully protect Mother's fundamental rights.

## INEFFECTIVE ASSISTANCE OF COUNSEL

{15} Mother further alleges she received ineffective assistance of counsel. "Assistance of counsel is presumed effective unless the defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." *State v. Gonzales,* 113 N.M. 221, 229–30, 824 P.2d 1023, 1031–32 (1992); *In re Termination of Parental Rights of James W.H.,* 115 N.M. 256, 259, 849 P.2d 1079, 1082 (Ct.App.1993) (applying criminal standard for ineffective assistance of counsel in context of termination of parental rights hearing). We cannot say that Mother received ineffective assistance of counsel on

this record because there is no indication the result would have been different if Mother had been present. Appellate counsel for Mother admitted at oral argument that there is substantial evidence in the record as it now exists to support the trial court's decision, although she argued that the record might have been different if Mother had been able to participate.

{16} Trial counsel did have an ethical duty to represent his client vigorously. *See Stella P.*, 1999–NMCA–100, ¶ 28, 127 N.M. 699, 986 P.2d 495: Rule 16–103 NMRA 1999 cmt. (stating that a lawyer should act "with zeal in advocacy upon the client's behalf"). But neither party has directed us to anything in the record to indicate whether trial counsel attempted to contact his client after she was deported, instructed her to contact him after she was deported, attempted to contact her relatives or friends in Las Cruces who might know of her whereabouts, made any effort to have his client appear by telephone or by deposition, or sought a brief continuance to attempt to make such arrangements. On this state of the record we are unable to say that trial counsel did not meet the bare minimum standard, although we have grave concerns that counsel did not do everything that needed to be done under our recent opinion in *Stella P.*

{17} The parties disagree concerning the ease with which Mother may be contacted. The Department implies that she is unreachable. Appellate counsel states that she has been in contact with Mother directly and through her sister who lives in this country. If, on remand, Mother should prove unreachable, the parties should be prepared to put on the record their attempts to reach her. Due process does not require that the parties move heaven and earth to contact Mother, only that they make reasonable efforts to contact her.

{18} We reverse and remand for further proceedings.

{19} **IT IS SO ORDERED.**

BOSSON and ARMIJO, JJ., concur.