This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39326

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**LARRY G.,**

Respondent-Appellant,

and

**FELICIA G.,**

Respondent,

**IN THE MATTER OF JORDAN G.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY
Mercedes C. Murphy, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Georgia Garman Berrenberg
Albuquerque, NM

Guardian Ad Litem

## DECISION

**BOGARDUS, Judge.**

**{1}**     Larry G. (Father) appeals the termination of his parental rights to his son, Jordan G. (Child). Father advances two arguments: (1) the proceedings constituted fundamental error that violated Father's due process rights, and (2) insufficient evidence supported termination of Father's parental rights. Unpersuaded, we affirm.[1]

## BACKGROUND

**{2}**     Father and Felicia G. (Mother) are the parents of Child. In September 2016, the Children, Youth & Families Department (CYFD) filed a petition alleging abuse and neglect by Mother[2] and Father. The district court held an adjudicatory hearing as to Father in November 2016. Father, who was incarcerated, appeared telephonically. Father pleaded no contest to neglect, pursuant to NMSA 1978, Section 32A-4-2(F)(2),(4) (2016, amended 2018).[3] The factual basis for Father's no contest plea included that Child, then three years old, was seriously abused and neglected, Father had care and control over Child before he was incarcerated, Father knew that Mother had a drug problem and was unable or unwilling to care for Child, Father failed to obtain legal custody of Child, and Father violated the terms of his probation, which resulted in Child being returned to Mother.

**{3}**     The district court ordered CYFD to implement a court approved treatment plan for Father which included among other things: participation in therapeutic visits with Child; participation in Child's medical and dental appointments; obtain and maintain employment; call CYFD daily to see if he was required to provide a urine sample and participate in random urinalysis as requested; attend intensive outpatient substance abuse treatment, with the proviso that CYFD would request inpatient treatment if Father was unable to maintain sobriety; complete a parenting class or group; sign releases of information; complete a psychological evaluation and follow recommendations; obtain and maintain housing; complete relinquishment counseling; provide CYFD with names of relatives; complete a mental health evaluation and follow recommendations; and participate in family therapy with Child and follow recommendations.

---

1This is a non-precedential expedited bench decision. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

2Mother pleaded no contest to abuse and neglect of Child, and the district court found aggravated circumstances because Mother subjected Child to "chronic abuse and torture." Mother was sentenced to nine years in prison for her abuse of Child and her other children and relinquished her parental rights to Child before CYFD moved to terminate Father's parental rights.

3All references to Section 32A-4-2 in this opinion are to the 2016 version of the statute.

**{4}** Permanency hearings were held in September 2017, January 2018, August 2018, and March 2019. During this time, Child's permanency plan was reunification with Father.

**{5}** Father made significant progress in his treatment plan after he was released from prison in May 2017, such that Child began a trial home visit on August 5, 2018. The trial home visit was disrupted when Father was arrested for residential burglary in October 2018. Child was returned to foster care, but after six weeks, Child was placed in treatment foster care due to behavioral issues. Father remained incarcerated until November 2018 and charges remained pending until May 2019.

**{6}** A final permanency hearing was held in September 2019 during which CYFD requested Child's permanency plan be changed to adoption. James Anaya, the permanency planning worker assigned to Father's case, testified that Father had not been compliant with his treatment plan. According to Anaya, Father was not providing samples for urinalysis, stopped attending visits with Child, was involved in a domestic violence issue that resulted in a temporary restraining order against him, failed to keep in regular contact with CYFD, and appeared intoxicated during a team meeting. At the hearing, Father admitted to recent drug use, but requested a second chance with Child. The district court ordered Father to continue to participate in his treatment plan, participate in substance abuse treatment, and suggested he participate in an inpatient treatment if necessary. The district court granted CYFD's request to change the permanency plan to adoption, but made clear to Father that he had the opportunity to have the plan changed back to reunification.

**{7}** CYFD moved to terminate Father's parental rights in October 2019, pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005). The termination of parental rights trial (TPR) was held over two days in November 2019 and February 2020, with a status hearing held between those dates in December 2019. The district court issued a judgment terminating Father's parental rights of Child in April 2020, in which it incorporated the findings of fact and conclusions of law that the district court had issued twelve days before. Father filed a motion to reconsider the judgment, which was denied. This appeal followed.

## DISCUSSION

**{8}** Father argues that his due process rights were violated because Child was not returned to him when the charges for residential burglary and a probation violation were dismissed even though he had already completed his treatment plan, and because the district court ordered Father to enroll in a one year inpatient substance abuse program—which he characterizes as a new requirement added to his treatment plan–without an opportunity for him to challenge it. He further argues that CYFD did not present clear and convincing evidence to support termination of his parental rights. We address each argument in turn.

## I.    Father's Right to Due Process Was Not Violated

**{9}** Regarding Father's due process claims, our review is de novo. *State ex rel. Child., Youth, & Fams. Dep't v. Rosa R.*, 1999-NMCA-141, ¶ 6, 128 N.M. 304, 992 P.2d 317. As Father concedes, he failed to preserve his arguments regarding due process, and we therefore review for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA (allowing judicial review of an unpreserved issue for fundamental error). "[T]ermination of parental rights cases can be candidates for fundamental error analysis[,]" and "we will address unpreserved errors that go to the foundation of the case, and which deprive the defendant of rights essential to his defense. Although fundamental error does not generally apply in civil cases, we will apply the doctrine in exceptional cases." *State ex. rel. Child., Youth & Fams. Dep't v. Paul P., Jr.*, 1999-NMCA-077, ¶ 14, 127 N.M. 492, 983 P.2d 1011 (internal quotation marks and citation omitted).

**{10}** "Whether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Child., Youth & Fams. Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 8, 406 P.3d 972 (alteration, internal quotation marks, and citation omitted). "To evaluate the due process owed to a parent in termination proceedings, we use the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 . . . (1976)." *State ex rel. Child., Youth & Fams. Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 9, 406 P.3d 972. Three factors are weighed under that test: "the parent's interest; the risk to the parent of an erroneous deprivation through the procedures used in light of the probable value, if any, of additional or substitute procedural safeguards; and the government's interest." *Id.* A parent's fundamental interest in the parent-child relationship and the state's interest in protecting the welfare of the child balance equally; therefore, the second *Mathews'* factor is dispositive. *State ex rel. Child., Youth & Fams. Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 20, 133 N.M. 827, 70 P.3d 1266. "Our conclusion does not depend on a showing that [the father] would have been successful if [he] had been provided with the additional procedures [he] alleges should have been provided; rather, [the father] need only show that there is a reasonable likelihood that the outcome might have been different." *State ex rel. Child., Youth & Fams. Dep't v. Browind C.*, 2007-NMCA-023, ¶ 31, 141 N.M. 166, 152 P.3d 153 (emphasis, internal quotation marks, and citation omitted). We also recognize that "due process is a flexible right" and "the amount of process due depends on the particular circumstances of each case." *In re Pamela A.G.*, 2006-NMSC-019, ¶ 12, 139 N.M. 459, 134 P.3d 746.

**{11}** Father first asserts that because he completed his treatment plan, presumably evidenced by the fact that Child was placed in his custody for a trial home visit, Child should have been returned to his custody once his charges for residential burglary and probation violation were dropped and his probation was dismissed. Father argues that there was no evidence to require him to complete a new treatment plan, and in order to do so, CYFD was required to file a new petition or move to supplement the old one.

**{12}** Father's assertion rests on the characterization that he "completed" his treatment plan. Our review of the record indicates that even though Anaya and the district court characterized Father's treatment plan as "completed," there were parts of his treatment plan that required his ongoing participation at the time of his arrest, which included: attending family therapy and couple's counseling; attending visits with Child; attending

medical appointments for Child; maintaining employment; participating in random drug testing; and participating in parenting classes, as well as additional requirements. Around the time the trial home visit began, CYFD requested that the district court find that Father "made excellent progress toward alleviating or mitigating the conditions which brought [Child] into care" sufficient to warrant the visit. CYFD made no request that the district court find that the treatment plan was complete, and Father remained subject to it. Even with the trial home visit, there was no guarantee that Child would remain in Father's care or that Father would ultimately receive custody of Child at the conclusion of the proceedings. Nor did CYFD assert—or the district court find at that time— that the conditions in the home that led to abuse had been corrected, or that it was safe to return Child to Father without protective supervision of CYFD. *Compare* NMSA 1978, § 32A-4-25(I)(1) (2016) (permitting the district court to "dismiss the action and return the child without supervision" at the end of a permanency hearing if the district court finds "that the conditions in the home that led to abuse were corrected and it is safe for the return of the abused child"), *with* § 32A-4-25(I)(2) (permitting the district court to allow that the child remain with the child's parent subject to conditions the court may prescribe including supervision of CYFD).

**{13}**     Assuming for the sake of argument that Father had completed the requirements in his treatment plan, we also disagree with Father's contention that the district court was required to make a finding that he committed a new act of abuse or neglect in order for it to require Father to complete a new treatment plan. Father cites only to *State ex rel. Child., Youth & Fams. Dep't v. Benjamin O.*, 2007-NMCA-070, ¶¶ 27-33, 141 N.M. 692, 160 P.3d 601, to support this. In *Benjamin O.*, this Court reversed the district court's adjudication of abuse and neglect in a previous decision, *id.* ¶ 13, and concluded the district court may not rely on an adjudication of abuse or neglect that had been reversed on substantive grounds to terminate parental rights, and determined that the findings of the district court were not sufficiently developed to terminate the parental rights. *Id.* ¶ 33. In this case, however, Father's adjudication of abuse and neglect was neither reversed by an appellate court, nor was there any finding at the time of the trial home visit that the conditions in the home that led to abuse had been corrected. *Benjamin O.* simply does not apply to the matter at hand.

**{14}**     Because Father cites no relevant authority to support his proposition, we assume there is none and decline to further address this argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that where arguments are not supported by cited authority, we presume counsel was unable to find supporting authority, will not research authority for counsel, and will not review issues unsupported by authority).[4]

**{15}**     Father next argues that his due process rights were violated when the district court ordered Father to enroll in an inpatient substance abuse program. Father

---

[4]To the extent that Father argues that if there were new charges of abuse and neglect, CYFD should have formally filed a new petition, or moved to supplement the old one, we decline to address the argument because neither the district court nor CYFD asserted different or new charges of abuse or neglect in the proceedings.

contends that the district court did not have the authority to amend the treatment plan and base the termination of parental rights on Father's failure to adhere to that amended order without giving Father an opportunity to challenge the item being added to his plan. To address this argument, we again rely on the *Mathews* test and consider whether the district court's requirement of inpatient substance abuse treatment increased the risk of an erroneous termination of Father's parental relationship with Child. *See Pamela A.G.*, 2006-NMSC-019, ¶ 13. Father relies on *State ex rel. Child., Youth & Fams. Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 21, 128 N.M. 701, 997 P.2d 833, and *State ex rel. Child., Youth & Fams. Dep't v. Maria C.*, 2004-NMCA-083, ¶ 34, 136 N.M. 53, 94 P.3d 796, to support his claim. Neither of these cases support Father's assertion.

**{16}** In *Vanessa C.*, the mother argued her due process rights were violated because the district court improperly relied on hearsay evidence and failed to swear in witnesses at a futility hearing. 2000-NMCA-025, ¶ 11. This Court held there was no due process violation reasoning that the mother had advance notice that CYFD intended to seek a finding of futility and had the opportunity to contest the reports that constituted hearsay at the hearing. *Id.* ¶¶ 17-19. This Court recommended that in the future, if a potential for an adverse ruling occurs at a judicial review hearing, that counsel be prepared to present evidence and cross-examine witnesses. *Id.* ¶ 21.

**{17}** In *Maria C.*, this Court held "that as a general matter, parents have a due process right to fair notice and an opportunity for meaningful participation at the permanency stage, including the right to present evidence and cross[-]examine witnesses, when their presence or additional safeguards would be useful or beneficial to their defense." 2004-NMCA-083, ¶ 34. We also held that the mother's absence at two judicial review hearings was not a violation of her due process rights because there would not have been any value in the process the mother advocated based on her situation. *Id.* ¶¶ 38, 47. Neither of these cases cited by Father stand for the proposition that the district court is without the authority to amend the treatment plan as the district court did in Father's case.

**{18}** We note that at the September 2019 judicial review hearing, Father was represented by counsel and had notice before the hearing that CYFD was recommending that Child's permanency plan be changed to adoption. Father also had notice that CYFD would present evidence that he was not in compliance with his treatment plan in several ways, including that visits between Father and Child had stopped because "[Father] could not handle [Child]," a home visit had not been completed for the previous month, he was referred for therapy but had not participated, he stopped couples counseling in April 2019, and that he had minimal contact with CYFD. He was also on notice that CYFD would present evidence that he struggled with substance abuse and during the hearing, Father admitted to drug use. The district court directed CYFD to add that Father must participate in substance abuse treatment to his treatment plan and suggested that if he could not stop using methamphetamine, he check himself into an inpatient treatment program. Father was given an opportunity to object to the substance abuse treatment requirement, and asked clarifying questions

about the order. Moreover, Father had notice over the next five months that substance abuse treatment was required, including inpatient treatment, and had opportunities at three separate hearings, while he was represented by counsel, to show compliance with the plan or object to the requirement. He had the opportunity to cross-examine witnesses about his compliance and to bring evidence to the district court regarding his compliance.

**{19}** Based on the foregoing, we conclude that Father's right to due process was not violated by the requirement that he participate in inpatient substance abuse treatment. Father had adequate notice of the issue to be resolved, as well as the opportunity to prepare and present a case on that issue. Father has not shown that there is a reasonable risk that the requirement that Father participate in inpatient substance abuse treatment increased or assured the risk of erroneous termination of Father's parental relationship with Child. *See Pamela A.G.*, 2006-NMSC-019, ¶ 13, (explaining that whether a parent was given due process turns on whether the procedure used increased the risk of an erroneous finding of abuse, which could lead to the deprivation of the parent's fundamental right to maintain their relationship with their child).

## II.      Substantial Evidence Supports the Termination of Father's Parental Rights

**{20}** To terminate parental rights, CYFD must show "that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] to assist the parent in adjusting the conditions that render the parent unable to properly care for the child." Section 32A-4-28(B)(2). The standard of proof for termination of parental rights is clear and convincing evidence. *Vanessa C.*, 2000-NMCA-025, ¶ 24. "For evidence to be clear and convincing, it must instantly tilt the scales into the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 2, 120 N.M. 463, 902 P.2d 1066 (internal quotation marks and citation omitted). "However, notwithstanding this standard of proof, this Court will not reweigh the evidence on appeal." *Vanessa C.*, 2000-NMCA-025, ¶ 24. Instead, "[t]his Court will uphold the termination if, viewing the evidence in the light most favorable to the judgment, the fact[-]finder could properly determine that the clear and convincing standard was met." *State ex rel. Child., Youth & Fams. Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. "To the extent our analysis requires interpretation of the Abuse and Neglect Act, . . . our review is de novo." *State ex rel. Child., Youth & Fams. Dep't v. William C.*, 2017-NMCA-058, ¶ 18, 400 P.3d 266.

### A.      Substantial Evidence Supports the Finding That the Conditions and Causes of Neglect Were Unlikely to Change in the Foreseeable Future

**{21}** Father argues that he had ameliorated the causes and conditions of neglect such that it was erroneous to find that the causes and conditions of neglect were unlikely to change in the foreseeable future. *See* § 32A-4-28(B)(2). " 'We have interpreted the term 'foreseeable future' to refer to corrective change within 'a reasonably definite time or

within the near future.' " *State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 34, 132 N.M. 299, 47 P.3d 859 (quoting *In re Termination of Parental Rights of Rueben & Elizabeth O.*, 1986-NMCA-031, ¶ 30, 104 N.M. 644, 725 P.2d 844). "We have also noted that in balancing the interests of the parents and children, the [district] court is not required to place the children indefinitely in a legal holding pattern." *Id.* ¶ 34 (internal quotation marks and citation omitted); *see Eventyr J.*, 1995-NMCA-087, ¶ 34 ("There is little that can be as detrimental to a child's sound development as uncertainty over whether he [or she] is to remain in his [or her] current home, under the care of his [or her] parents or foster parents, especially when such uncertainty is prolonged." (internal quotation marks and citation omitted)).

**{22}**    Father contends that the original basis of the neglect adjudication included Mother's failures and his failure to protect Child due to his incarceration. He claims that because the basis of adjudication was ameliorated once he was released from prison, non-compliance with any remaining portion of his treatment plan should not be a basis for terminating his parental rights.

**{23}**    At the initial adjudication hearing, Father pleaded no contest to the charge that he neglected Child. Child was without proper parental care and control or subsistence, education, medical, or other care or control necessary for Child's well-being because of the faults or habits of Father or Father's failure or refusal to provide them to Child when so able, pursuant to Section 32A-4-2(F)(2). He also pleaded no contest to the charge that he was unable to discharge his responsibilities to Child because of incarceration, pursuant to Section 32A-4-2(F)(4).

**{24}**    Although Father had ameliorated the neglect charge based on incarceration, there is substantial evidence supporting the charge that he failed to provide proper parental care and control. The evidence established that Father had not visited with Child since August 2019, had shown little motivation to recreate a connection with Child, was unwilling to go to visits with Child without his other children despite the fact that the other children's presence dysregulated Child, did not want to pursue medication for Child because he thought it was unnecessary, remained unemployed, and was unwilling to participate in inpatient substance abuse treatment because it interfered with his parenting of his other children. As might be expected, Child's therapist was not able to make progress in building a bond between Child and Father, and Child became dysregulated at any mention of Father. This evidence supports a conclusion that Father continued to fail to provide Child with proper parental care and control or subsistence, education, medical, or other care or control necessary for Child's well-being.

**{25}**    The items on Father's treatment plan during the judicial review hearings after his incarceration described previously—and during the TPR that included entering a long-term inpatient treatment for substance abuse issues, complete a domestic violence assessment, participate in counseling and in the batterer's program, enroll in parenting and couple's counseling, and do random urinalysis testing—were reasonably related to his failure to provide proper parental care and control.

**{26}** In balancing the interests of Father and Child and assessing the risks, we are also mindful of Child's interest in a timely and permanent placement. *See Mafin M.*, 2003-NMSC-015, ¶ 24. In terms of placement, "best interests" is interpreted as solutions that are not detrimental or harmful to the child; not necessarily the best choice. *State ex rel. Child., Youth & Fams. Dep't v. Joe R.*, 1997-NMSC-038, ¶ 28, 123 N.M. 711, 945 P.2d 76. Prolonged uncertainty and instability is particularly detrimental to any child. Thus, it is critical for the district court to make a timely decision regarding placement. *State ex rel. Child., Youth & Fams. Dep't v. Anne McD.*, 2000-NMCA-020, ¶ 40, 128 N.M. 618, 995 P.2d 1060. Child in this case had a pressing need for permanency given his more than three years in CYFD custody and Father's admission that, even after over three years of CYFD involvement, he would be unable to parent Child safely within the year. Further, Child's therapist testified that she believed it would take at minimum between three and six months, and only with intensive work between Father, Child, and their providers, that they could be in a position to have therapeutic visits.

**{27}** Given Father's ongoing difficulties with providing appropriate parental care, despite his release from incarceration and the numerous treatment plans that were created to assist Father with addressing those issues, we conclude that Father's conduct did not ameliorate the causes and conditions of neglect, such that it was erroneous to find that the causes and conditions were unlikely to change in the foreseeable future, and we also determine that his treatment plan was reasonably related to the original basis of his neglect determination. Father's unwillingness to consistently engage with his treatment plan put Child at risk of further neglect. Therefore, the district court's finding that the conditions and causes of neglect were unlikely to change in the foreseeable future was supported by clear and convincing evidence.

**B.    The Requirement That Father Participate in Inpatient Substance Abuse Treatment Was Not a Per Se Unreasonable Effort to Assist Father**

**{28}** We consider the totality of the circumstances when reviewing the district court's determination that CYFD made reasonable efforts to assist the parent. *See State ex rel. Child., Youth & Fams. Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814; *see also* § 32A-4-28(B)(2).

**{29}** Father makes no argument that the totality of the circumstances fail to show that CYFD failed to make reasonable efforts. Instead, he contends it was per se unreasonable for the district court to impose a requirement that he enroll in a year-long substance abuse program to ameliorate the causes and conditions of neglect because there was no evidence that substance abuse was the cause or condition of the original neglect of Child. *See State ex rel. Child., Youth & Fams. Dep't v. Penny J.*, 1994-NMCA-143, ¶ 20, 119 N.M. 328, 890 P.2d 389 (explaining that a parent may impeach the reasonableness of efforts to enable him or her to correct the underlying causes and conditions on the basis that those efforts were directed at the wrong causes and conditions). He further claims there was no evidence that Father's substance abuse problems were sufficiently severe to require inpatient treatment.

**{30}** Father ignores that, as stated before, his failure to provide proper parental care and control was a basis of his charge of neglect. Father was to undergo random urine testing for drug use as part of his treatment plan from the beginning of the process, and his first treatment plan put him on notice that inpatient substance abuse treatment was a possible requirement if outpatient substance abuse treatment was unsuccessful.

**{31}** At the September 2019 hearing, Father admitted that he started using drugs in March 2019 and he was using methamphetamine regularly, as recently as a few days before the hearing. In response to Father's admission and his erratic behavior, the district court again ordered Father to participate in substance abuse treatment and suggested that if he could not stop using, he check himself into an inpatient treatment program. Father did not comply with that order and was unable to testify at the first part of his TPR trial in November 2019 because he tested positive for illegal substances and admitted to using methamphetamine and another drug the previous day. Because of the positive drug screen and his admission of drug use, the district court ordered that Father participate in inpatient treatment before the TPR trial resumed, which was scheduled to occur in three months. Father did not participate in inpatient treatment. Father's use of methamphetamine coincided with Father's failure to visit consistently with Child, his inability to have successful visits with Child, his failure to properly attend treatment team meetings for Child, domestic violence incidents with his partner, his failure to secure stable housing, and his failure to maintain employment.

**{32}** Given that Father's abuse and neglect charges were based on his failure to provide proper parental care, and his failure to participate with his treatment plan coincided with this use of methamphetamine, we conclude that CYFD and the district court's requirement that Father participate in inpatient substance abuse treatment was reasonably related to the causes and conditions of abuse and neglect alleged by CYFD and was not per se unreasonable.

**{33}** Lastly, Father argues he was not given notice that his rights were terminated based on presumptive abandonment, pursuant to Section 32A-4-28(B)(3) and clear and convincing evidence did not support termination of his parental rights based on any such abandonment. To the extent that the district court's findings of fact and conclusions of law refer to NMSA 1978, Section 32A-5-15(B)(3) (1995), such findings constitute a clerical error, and we remand to the district court to correct the error to refer to Section 32A-4-28(B)(2). *See State v. Ross*, 1983-NMCA-065, ¶ 17, 100 N.M. 48, 665 P.2d 310 (stating that oversights or omissions in judgments or orders constitute clerical errors that are not jurisdictional, and may be corrected on remand).

## CONCLUSION

**{34}** For the foregoing reasons, we affirm the termination of Father's parental rights and remand to the district court for the correction of a clerical error in accordance with this opinion.

**{35}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**