This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39892

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**

Petitioner-Appellee,

v.

**HOWARD S.,**

Respondent-Appellant,

and

**NINA D.,**

Respondent,

**IN THE MATTER OF OLIVIA D. and HOWARD B.S.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
Cheryl H. Johnston, District Court Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons

Albuquerque, NM

for Appellant

Ray Law Office
Brian T. Ray
Albuquerque, NM

Guardian Ad Litem

**DECISION**

**WRAY, Judge.**

**{1}** Howard S. (Father) appeals the judgment terminating his parental rights as to Children. He primarily argues that proceeding with the termination of parental rights hearing in his absence violated his due process rights. Father additionally contends that (1) he was denied effective assistance of counsel, and (2) the district court was influenced by inappropriate ex parte communications with his sister. We affirm. Because the parties are familiar with the record, we discuss the facts and proceedings that are necessary in our analysis of the issues presented.

**DISCUSSION**

**{2}** Typically, "[t]his Court will uphold the termination if, viewing the evidence in the light most favorable to the judgment, a fact[-]finder could properly determine that the clear and convincing standard was met." *State ex rel. Child., Youth & Fams. Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. We begin with Father's due process argument.

**I.      Father's Right to Due Process Was Not Violated**

**{3}** Father does not challenge the abuse or neglect findings nor does he assert there was a lack of evidence to support termination of his parental rights. Instead, Father's primary contention on appeal is that his due process rights were violated. Father concedes that he did not preserve his due process challenge and seeks fundamental error review. To the extent that the State appears to suggest that we should not review Father's claim because it was unpreserved, this Court has discretion to review unpreserved questions involving fundamental error or fundamental rights, *see* Rule 12-321(B) NMRA, especially in the context of termination proceedings, *see* Rule 12-202 NMRA (providing for appeals as a matter of right); N.M. Const. art. VI, § 2 (guaranteeing every "aggrieved party . . . an absolute right to one appeal"); NMSA 1978, § 32A-1-17 (1999) (recognizing the right to appeal judgments under the Children's Code); *see also State ex rel. Child., Youth & Fams. Dep't v. Alicia P.*, 1999-NMCA-098, ¶ 3, 127 N.M. 664, 986 P.2d 460 (providing that the New Mexico Constitution and Section 32A-1-17 "make it clear that [a parent] has the right to appeal the termination of [their] parental

rights"). Thus, notwithstanding Father's failure to preserve, we review the due process challenge de novo. *See State ex rel. Child., Youth & Fams. Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 8, 406 P.3d 972.

**{4}**   "[A] parent's legal relationship with [their] child cannot be severed without due process of law." *State ex rel. Child., Youth & Fams. Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 18, 133 N.M. 827, 70 P.3d 1266 (citing *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982) (providing that the Due Process Clause requires states to prove allegations by clear and convincing evidence before parental rights are terminated)). While "due process is a flexible right" and "[t]he amount of process due depends on the particular circumstances of each case," *State ex rel. Child., Youth & Fams. Dep't v. Pamela R.D.G.*, 2006-NMSC-019, ¶ 12, 139 N.M. 459, 134 P.3d 746, due process in termination proceedings requires "scrupulous fairness to the parent," guaranteeing parents "be accorded an opportunity to be heard at a meaningful time and in a meaningful manner," *Mafin M.*, 2003-NMSC-015, ¶ 18 (internal quotation marks and citations omitted), and a right to defend, *State ex rel. Child., Youth & Fams. Dep't v. Paul P., Jr.*, 1999-NMCA-077, ¶¶ 14-15, 127 N.M. 492, 983 P.2d 1011. More specifically, due process in this context necessitates "the right to review the evidence presented by the [Children, Youth and Families Department (CYFD)], to consult with [their] attorney, and to present evidence in person or by telephone or deposition." *See State ex rel. Child., Youth & Fams. Dep't v. Steven R.*, 1999-NMCA-141, ¶ 11, 128 N.M. 304, 992 P.2d 317. Father need not demonstrate that he would have prevailed below, but must demonstrate that had these procedures been implemented, there was "a reasonable likelihood that the outcome might have been different." *Pamela R.D.G.*, 2006-NMSC-019, ¶ 14 (internal quotation marks and citation omitted).

**{5}**   Father failed to appear at both of the termination of parental rights hearings, and he argues on appeal that the district court violated his due process rights by continuing with termination in his absence. According to Father, CYFD and the district court did not adequately protect his due process rights and should have taken additional measures to ensure that he could participate. We agree with Father that the State—including the district court and CYFD—has a duty "to ensure that scrupulously fair procedures are followed when it interferes with a parent's right to raise their children." *See State ex rel. Child., Youth & Fams. Dep't v. Maria C.*, 2004-NMCA-083, ¶¶ 50, 51-52, 136 N.M. 53, 94 P.3d 796. Having reviewed the record, however, we are satisfied that the district court, CYFD, and Father's counsel made "every reasonable attempt to allow [Father] to participate meaningfully the proceedings," *see Mafin M.*, 2003-NMSC-015, ¶ 21, and further that there is no reasonable likelihood that Father's presence at the termination hearing might have affected the outcome of the proceeding, *see Pamela R.D.G.*, 2006-NMSC-019, ¶ 14.

**{6}**   The termination of parental rights hearing was set for January 8, 2021. Father did not appear at that hearing. Though Father had not communicated with his attorney for "some time" before the January 8, 2021 hearing, his attorney had repeatedly sent information about the hearing to the email, phone number, and physical mailing address that Father had provided and, after receiving no response, checked the local jails to see

if he was there. CYFD had also informed Father of the hearing in its weekly communication to Father, and he was similarly unresponsive. CYFD and Father's attorney informed Father of alternative means to attend the hearing—including calling in—and offered assistance. Early in the hearing, the mother's attorney messaged a group text that included both parents, their attorneys, and CYFD. Thirty minutes after the start time for the hearing, Father responded to the text message and indicated a problem with Wi-Fi access. By all indication, numerous parties informed Father of alternative means of connecting to the hearing and offered to help Father if he let them know he would have issues accessing the hearing, including CYFD explicitly telling Father before the hearing that he could call into the hearing should he not be able to access virtually. Soon after Father texted, the district court directed counsel to tell Father that he could call into the hearing and "several people offered suggestions" to Father through the group text to help him participate. The district court then continued the hearing to allow Father the opportunity to utilize the wide range of resources that numerous parties offered to ensure that Father could participate. Even still, Father failed to respond to offers to help him access the hearing, to communicate with his attorney, or to attend the continued hearing. At the continued termination hearing, Father's counsel stated that though she reached out repeatedly to Father and he did not respond, Father did respond to CYFD the day before the hearing and informed CYFD that he would attend if he had Wi-Fi. CYFD responded to Father, sent a reminder for the second hearing, and provided the link. Based on this record, we conclude that the district court and CYFD made "every reasonable attempt" to permit Father's participation in the hearing. *See Mafin M.*, 2003-NMSC-015, ¶ 21.

**{7}** We further conclude that there is no reasonable likelihood that Father's participation might have changed the outcome of the proceeding. At the continued termination hearing, the district court held CYFD to its burden of proof by hearing witnesses and receiving testimony. Father's attorney participated on his behalf and argued to preserve his rights. Father's failure to appear at the termination proceedings, as well as Father's failure to communicate, was commonplace throughout the proceedings. When Father attended hearings, visitations, or medical appointments, or otherwise engaged in communication, the interactions were often unproductive and alarmingly threatening or violent. Father does not challenge the district court's findings supporting termination of parental rights and does not explain how his participation would have changed the result—how he would have assisted his counsel to impact or change the district court's findings. Father has therefore failed to show "a reasonable likelihood that the outcome might have been different" had his requested procedures been implemented. *See Pamela R.D.G.*, 2006-NMSC-019, ¶ 14 (internal quotation marks and citation omitted). Although Father has important rights to protect in these proceedings, "[w]hen balancing the interests of parents and children, the court is not required to place the children indefinitely in a legal holding pattern, when doing so would be detrimental to the children's interests." *Mafin M.*, 2003-NMSC-015, ¶ 24 (internal quotation marks and citation omitted). Accordingly, we hold that Father has not met the burden to show that his absence from the termination proceedings violated his due process rights. *See, e.g., Maria C.*, 2004-NMCA-083, ¶ 52.

## II. Father's Remaining Arguments Do Not Require Reversal

**{8}** The district court appointed counsel for Father for the termination proceedings. *See* NMSA 1978, § 32A-4-29(F) (2009, amended 2022) (providing for court-appointed counsel in termination cases). On appeal, Father contends that his counsel in the district court was ineffective for failing to advocate for additional protections or another continuance. "The right to effective assistance of counsel extends to parents in termination cases." *State ex rel. Child., Youth & Fams. Dep't v. William M.*, 2007-NMCA-055, ¶ 53, 141 N.M. 765, 161 P.3d 262. Counsel is "presumed effective" unless it is shown both that "counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." *Steven R.*, 1999-NMCA-141, ¶ 15 (internal quotation marks and citation omitted). We do not decide whether counsel's performance was reasonably competent but instead turn immediately to prejudice. Father's ineffective assistance of counsel challenge is rooted in the same argument as the due process challenge—that counsel should have advocated for additional procedures or protections. We have already determined that Father's due process challenge failed to show that additional procedures could have changed the outcome. For the similar reasons, Father also fails to demonstrate that counsel's alleged inadequacies actually prejudiced him. *See State ex rel. Child., Youth & Fams. Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 33, 128 N.M. 701, 997 P.2d 833 (recognizing that failure to prove prejudice is fatal to a claim of ineffective assistance of counsel).

**{9}** We decline to address Father's final contention regarding inappropriate ex parte communications between the district court and Father's sister because Father does not direct us to anything in the record indicating that he asked the district court to address and rule on this issue. This argument was appropriately set forth on Father's behalf, but we see no basis for reversal in Father's allegations.

## CONCLUSION

**{10}** We affirm.

**{11} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**